Michael Amberg, Cal. Bar No. 330553
KING & WOOD MALLESONS LLP
2500 Sand Hill Road, Suite 111
Menlo Park, CA 94025
Telephone: (650) 858-1285
Facsimile: (650) 858-1226
michael.amberg@us.kwm.com

M.M. Utterback (pending admission *pro hac vice*)
KING & WOOD MALLESONS LLP
500 5th Ave, 50th Floor
New York, NY 10110
Telephone: (212) 319-4755
Facsimile: (917) 591-8167
meg.utterback@us.kwm.com

*Attorneys for Petitioners*
*SinSin Europe Solar Asset Limited Partnership and SinSin Solar Capital Limited Partnership*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SINSIN EUROPE SOLAR ASSET LIMITED PARTNERSHIP and SINSIN SOLAR CAPITAL LIMITED PARTNERSHIP,<br><br>    Petitioners,<br><br>    v.<br><br>SPI ENERGY CO. LTD,<br><br>    Respondent. | Case No.<br><br>**PETITION TO CONFIRM ARBITRAL AWARDS** |

**INTRODUCTION**

1. This is an action to confirm two arbitral awards pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38 ("New York Convention"), as implemented by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 201 *et seq*. Beginning in March 2018, Petitioners SinSin Europe Solar Asset Limited Partnership ("SinSin Europe") and SinSin Solar Capital Limited Partnership ("SinSin Solar") (collectively, "Petitioners" or "SinSin") and SPI Energy Co. Ltd ("SPI Energy" or "Respondent") and SPI China (HK) Limited ("SPI China") (collectively, "SPI") participated in two arbitrations

pursuant to an arbitration clause contained in the parties' Share Sale and Purchase Agreement dated September 6, 2014 ("SPA").

2. Both arbitrations involved the same four parties, were administered by the Malta Arbitration Centre, and were presided over by the same three-member tribunal, which issued two Final Awards on October 29, 2020, the first in Malta Arbitration Centre Arbitration Reference No. I 5320/2018 (the "First Award") and the second in Malta Arbitration Centre Arbitration Reference No. I 5532/2018 (the "Second Award") (collectively, the "Awards"). Certified originals of each Award are attached hereto as **Exhibits A** and **B**.

3. The SPA provides that any awards of the arbitrators "shall be final and binding upon the Parties."

4. SPI challenged both Awards in Maltese court. On November 12, 2021, the Malta Court of Appeal (Inferior Jurisdiction) ruled that both appeals were null and void.

5. SPI subsequently sought new trials in the two court actions challenging the Awards. On March 30, 2022, the Chief Justice of the Malta Court of Appeal (Inferior Jurisdiction) dismissed SPI's requests in both actions.

6. Confirmation of the two Final Awards is proper under the New York Convention and the FAA, both of which embody a policy favoring arbitration of disputes and leave the Court little discretion in declining to recognize and enforce arbitral awards. This is particularly true where, as here, the arbitral awards have been challenged and upheld by a court at the seat of arbitration.

**THE PARTIES**

7. Petitioners SinSin Europe and SinSin Solar are both Cayman Islands limited liability partnerships with their principal places of business in the Cayman Islands.

8. Petitioners are investment vehicles co-owned by two Chinese state-owned entities, namely Xingxing Cathay International Group Co. Ltd and China Railway Trust Co. Ltd.

9. Respondent SPI Energy is a Cayman Islands corporation with its principal place of business in McClellan Park, California. SPI Energy is a global provider of photovoltaic solutions which is listed on the Nasdaq Stock Market. As the result of a 2015 merger, SPI

2

Energy is the successor of Solar Power, Inc., a signatory of the SPA.

10. Non-party SPI China is a Hong Kong corporation with its principal place of business in Hong Kong.

11. Along with SPI China, SPI Energy is in the business of providing photovoltaic solutions for business, including developing, owning, and operating solar photovoltaic projects and providing engineering, procurement, and construction ("EPC") contractor services to photovoltaic projects.

## JURISDICTION AND VENUE

12. This Court has subject-matter jurisdiction pursuant to 9 U.S.C. § 203, which provides that the United States district courts "shall have original jurisdiction" over actions that fall under the New York Convention. This action falls under the New York Convention because it concerns arbitral awards "arising out of a legal relationship … which is considered as commercial" and are not awards "arising out of such a relationship which is entirely between citizens of the United States." 9 U.S.C. § 202. It is undisputed that the parties' relationship is commercial and that no party is a citizen of the United States. Subject-matter jurisdiction also is proper pursuant to 28 U.S.C. § 1331, as this action is "deemed to arise under the laws and treaties of the United States," as stated in 9 U.S.C. § 203. Subject-matter jurisdiction also is proper pursuant to 28 U.S.C. § 1332(a)(2), as SPI Energy is a citizen of the State of California based on its principal base of business, while Petitioners are both subjects of a foreign state.

13. This Court has personal jurisdiction over SPI Energy because its corporate headquarters are in this District, namely at 4803 Urbani Avenue, McClellan Park, California 95652.

14. Venue in this Court is proper pursuant to 9 U.S.C. § 204 because, save for the arbitration agreement, an action with respect to the controversy between the parties could be brought here. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because SPI Energy resides in this District. Venue is also proper pursuant to 28 U.S.C. § (b)(2) because a substantial part of the property that is the subject of this action is situated in this District.

## STATEMENT OF FACTS

15. The two arbitrations that resulted in the Awards arose from the SPA, which the parties entered into on September 6, 2014. Pursuant to the SPA, Petitioners agreed to sell all of the shares of Sinsin Renewable Investment Limited, a company registered in Malta (the "Company"), to Solar Power, Inc. and SPI China for a total consideration of €70,660,000. A copy of the SPA is attached as **Exhibit C**.

16. The SPA is governed by Maltese law and contains the following arbitration clause:

> Any question or difference which may arise concerning the construction, meaning or effect of this Agreement or concerning the rights, duties, obligations and liabilities of the Parties hereunder, or any other matter arising out of or in connection with this Agreement, shall be referred to and settled by arbitration. The venue of such arbitration shall be Malta. The number of arbitrators shall be three (3). The appointing authority shall be the Malta Arbitration Centre save as provided below. Each Party to the arbitration proceedings shall appoint one (1) arbitrator. If within fifteen (15) days after receipt of the claimant's notification of the appointment of an arbitrator the respondent has not notified the claimant of the name of the arbitrator he appoints, the second arbitrator shall be appointed by the Malta Arbitration Centre. The two (2) arbitrators thus appointed shall choose the third arbitrator who will act as the presiding arbitrator of the tribunal. If within fifteen (15) days after the appointment of the second arbitrator, the two arbitrators have not agreed upon the choice of the presiding arbitrator, then, at the request of either Party to the arbitration proceedings, the presiding arbitrator shall be appointed by the Malta Arbitration Centre. The language of the arbitration shall be English. The award of the arbitrators shall be final and binding upon the Parties. Any reference under this sub-clause 16.2 shall be deemed to be a reference to arbitration within the meaning of Part IV of the Arbitration Act (Chapter 387 of the Laws of Malta).

*See* Ex. C at ¶¶ 16.1 and 16.2.

17. After a merger in 2015, SPI Energy assumed the obligation to pay the consideration owed by Solar Power, Inc.

18. Despite failing to pay Petitioners most of the consideration owed under the SPA, SPI initiated Arbitration Reference No. I 5320/2018 (the "First Arbitration") in March 2018, asserting a claim for damages against Petitioners based on an alleged breach of the SPA and alleged bad faith by Petitioners with respect to a provision of the SPA related to Petitioners hiring SPI as EPC contractors on future projects.

19. Following preliminary proceedings in the First Arbitration, Petitioners initiated a

second arbitration (Arbitration Reference No. I 5532/2018) (the "Second Award") in September 2018, seeking payment of the outstanding consideration due (plus interest) as well as all damages suffered by Petitioners as a consequence of SPI's breach of the SPA and other subsequent agreements between the parties.

20. Detailed findings of fact related to the parties' disputes can be found in the First and Second Awards. *See* Ex. A at 20–24; Ex. B at 15–18; *see also* Ex. B at 20 (incorporating the First Award as an integral part of the Second Award).

21. The same three-member tribunal was appointed in both arbitrations and in accordance with the procedures called for by the SPA.

22. Both arbitrations were thoroughly litigated.

23. In December 2018, following agreement of the parties, the tribunal issued a procedural order in each arbitration mandating that testimony and evidence from each arbitration shall form part of the evidence of the other arbitration. Thereafter, the tribunal rendered seven further procedural orders that applied to both arbitrations. *See* Ex. A at 4–5; Ex. B at 3–4.

24. The tribunal heard from over a dozen fact and expert witnesses, and each party was given the opportunity to cross-examine the other party's witnesses. *See* Ex. A at 18–19; Ex. B at 13–14.

25. The parties declared that they had no further evidence. *See* Ex. A at 19; Ex. B at 15.

26. On October 29, 2020, the tribunal issued two Final Awards totaling 64 pages and detailing the procedural history of the arbitrations and each side's statements of fact and legal arguments. In each Award, the tribunal carefully considered those arguments and the plain language of the SPA and analyzed them under Maltese law. *See* Ex. A at 24–43; Ex. B at 15–18.

27. In the First Arbitration, the tribunal found that "it cannot be concluded that [Petitioners] are in breach of their contractual obligations in terms of the [SPA]" and that SPI had failed to present "convincing evidence to the degree required by law to support" their claim that "SinSin acted in bad faith either at negotiation stage [sic], execution stage or contract implementation stage … ." Ex. A at 43.

28. Accordingly, the tribunal dismissed the relief and remedies sought in Respondent's Statement of Claim "in their entirety" and ordered SPI to pay: (i) €240,000 in arbitrators' fees; (ii) the fees and expenses payable to the Malta Arbitration Centre; (iii) up to €511,600 of Petitioners' legal fees and costs; (iv) the travel and expenses of all witnesses (with certain limitations and exceptions); and (v) 50% of the fees and expenses for logistical and translation services. *Id.* at 43–44.

29. In the Second Arbitration, the tribunal found that SPI had breached the SPA and ordered them, jointly and severally, to pay Petitioners the outstanding balance owed under the SPA, which amounts to €38,054,000. The tribunal further ordered SPI to pay Petitioners interest at the rate of six percent on that outstanding balance, accruing from November 30, 2015 on half of the outstanding amount, and accruing from June 20, 2016 on the remaining half of the outstanding amount. Ex. B at 19. However, the tribunal dismissed Petitioners' claims for consequential damages. *Id.* The tribunal ordered that SPI bear 4/5ths of: (i) €180,000 in arbitrators' fees; (ii) the fees and expenses payable to the Malta Arbitration Centre; and (iii) up to €381,100 of Petitioners' legal fees and costs. SPI were further ordered to pay (i) the travel and expenses of all witnesses; and (ii) 50% of the fees and expenses for logistical and translation services. *Id.* at 20.

30. Following their issuance, SPI sought to appeal the Awards in the Malta Court of Appeal (Inferior Jurisdiction) (the "Malta Court"). The Malta Court declared both of SPI's appeals null and void and ordered them to pay costs. Certified translations and originals of the Malta Court's judgments are attached hereto as **Exhibits D** and **E**.

31. SPI then applied for new trials in each case before the Malta Court, but the Chief Justice of the Malta Court rejected SPI's requests to revoke the Malta Court's earlier judgments and ordered SPI to pay costs. Certified translations and originals of the Chief Justice's rulings are attached hereto as **Exhibits F** and **G**.

## ARGUMENT

32. Malta acceded to the New York Convention on June 22, 2000.[1]

33. The parties entered into the SPA in September 2014, well after Malta acceded to the New York Convention. Thus, the New York Convention governs the recognition and enforcement of the arbitration agreement contained in the SPA and any awards arising therefrom.

34. The FAA provides that, within three years of the issuance of an arbitral award falling under the New York Convention, "any party to the arbitration may apply … for an order confirming the award as against any other party to the arbitration." 9 U.S.C. § 207. Pursuant to Article IV of the New York Convention, which is incorporated into Chapter 2 of the FAA, the petitioning party must provide "[t]he duly authenticated original award or a duly certified copy thereof," and "[t]he original agreement" or "a duly certified copy thereof." *See* Exs. A–C.

35. A petition to confirm a foreign arbitral award is an expedited proceeding that is treated as a motion under the Federal Rules of Civil Procedure. *See* 9 U.S.C. § 6 (providing that a petition to enforce a domestic arbitral award is treated as a motion) and 9 U.S.C. § 208 (providing that Chapter 1 of the FAA applies to proceedings for recognition and enforcement of foreign arbitral awards unless inconsistent with Chapter 2 of the FAA or the New York Convention).

36. A district court's "review of a foreign arbitration award is quite circumscribed." *Ministry of Def. of the Islamic Republic of Iran v. Gould, Inc.*, 969 F.2d 764, 770 (9th Cir. 1992). There is a general pro-enforcement bias under the New York Convention. *See id.*; *see also Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519–20, 520 n.15 (1974). The "district court has little discretion: '[t]he court *shall* confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the [New York] Convention.'" *Ministry of Def.*, 969 F.2d at 770 (citing 9 U.S.C. § 207); *Polimaster Ltd. v. RAE Sys., Inc.*, 623 F.3d 832, 835–36 (9th Cir. 2010).

---

[1] *See* United Nations Treaty Collection, Status of Treaties, Chapter XXII (Commercial Arbitration and Mediation), *available at* https://treaties.un.org/pages/ViewDetails.aspx?src=TREATY&mtdsg_no=XXII-1&chapter=22&clang=_en.

37. The New York Convention enumerates seven defenses to the recognition or enforcement of an arbitral award: (1) lack of capacity of a party or invalidity of the arbitration agreement; (2) lack of proper notice or inability to present a case; (3) the award goes beyond the scope of the submission to arbitration; (4) the composition of the arbitral tribunal or the arbitral procedures were not in accordance with the parties' agreement or the applicable law; (5) the award has not yet become binding or has been set aside by a competent authority; (6) the subject matter of the dispute is not capable of being arbitrated; and (7) recognition of the award would be contrary to public policy of the enforcing country. New York Convention, Art. V.

38. The burden of showing the existence of a New York Convention defense is on the party seeking to avoid enforcement of the award. *Polimaster*, 623 F.3d at 836. In light of the pro-enforcement bias for foreign arbitral awards, these grounds "should be construed narrowly." *See Ministry of Def.*, 969 F.2d at 770 (citing *Parsons & Whittemore Overseas Co. v. Societe Generale de L'Industrie du Papeir*, 508 F.2d 969, 973, 976 (2nd Cir. 1974)).

39. The Awards are not subject to challenge under any of the seven grounds enumerated in the New York Convention. Each Award was made in accordance with the terms of the SPA and Maltese law. SPI actively participated in the arbitrations without objection. The parties prepared and presented their cases to the tribunal over the course of more than two years. The Awards total 64 pages, are thoroughly reasoned, and carefully apply Maltese contract law to each side's arguments and the plain language of the SPA. The Awards have not been set aside by a competent authority. On the contrary, the Malta Court twice dismissed SPI's attempts to challenge the Awards. Finally, confirming the Awards and holding SPI to the bargain they made in the SPA would not be contrary to public policy in the United States.

40. The SPA itself reinforces the narrow scope of judicial review by providing that any arbitral awards shall be final and binding upon the parties. Ex. C ¶ 16.2.

41. Accordingly, the Awards should be confirmed.

## CONCLUSION

42. For the foregoing reasons, Petitioners respectfully request that the Court confirm the Awards and enter judgment in accordance therewith against Respondent.

Dated: November 3, 2022

Respectfully submitted,

KING & WOOD MALLESONS LLP

By: /s/Michael Amberg
    Michael Amberg
    M.M. Utterback

*Attorneys for Petitioners SinSin Europe Solar Asset Limited Partnership and SinSin Solar Capital Limited Partnership*