# EXHIBIT D

**COURT OF APPEAL**

**(Inferior Jurisdiction)**

**HON. JUDGE**

**LAWRENCE MINTOFF**

Sitting of the 12th of November, 2021

Dr Frank B. Testa B.A., LL.D.
Mamo TCV Advocates
Palazzo Pietro Stiges
103, Strait Street
Valletta VLT 1436, Malta

12. 07. 2022

Inferior Appeal Number 78/2020 LM

**SinSin Europe Solar Asset Limited Partnership**

**and SinSin Solar Capital Limited Partnership**

('*the appellants*')

**vs.**

**SPI China (HK) Limited and SPI Energy Co. Ltd**

('*the defendants*')

**The Court,**

**Preliminarily**

1. This is an appeal presented by the plaintiff companies **SPI China (HK) Limited and SPI Energy Co. Ltd** [hereinafter referred to as 'the appellants'] from an arbitral award delivered in Arbitration number I.5532/2018 of the 29th October 2020, [hereinafter referred to as 'the arbitral award'], by the Arbitration Tribunal 'hereinafter referred to as 'the Tribunal'] in the Malta Arbitration Centre [hereinafter referred to as 'the Centre'], by means of which it decided on the pleas made by the plaintiff companies **SinSin Europe Solar Asset Limited Partnership** and **SinSin Solar Capital Limited Partnership** [hereinafter referred to as 'the defendants'] as follows:

*"81. The Arbitration Tribunal therefore FINDS and AWARDS, as follows :-*

*(A) The relief and remedies sought by Claimants in their Statement of Claim, consisting in:*

*(i) A declaration that the Respondents are in breach of their contractual obligations under the SPA, the Supplementary Agreement and/or any ancillary agreement thereto;*

*(ii) A declaration that the Respondents are jointly and severally liable towards both Claimants for the payment of the outstanding balance of the Sale Amount of EUR 38,054,000 together with interest;*

*(iii) A final award ordering the Respondents, jointly and severally between them, to pay the Claimants the outstanding balance of the Sale Amount of EUR 38,054,000;*

*(iv) A final award ordering the Respondents jointly and severally between them to pay interest at the rate of six per cent (6%) on the outstanding balance of the Sale Amount of EUR 38,054,000 accruing from the date that such amount was to be paid until the date of the eventual payment;*

*Are acceded to in their entirety and accordingly the Tribunal orders and condemns the Respondents jointly and severally to pay the Claimants the sum of thirty eight million and fifty four thousand Euro (EUR 38,054,000) (the "Debt") together with interest at the rate of six per cent (6%) accruing from the 30 November 2015 on half of the Debt and from the 20 June 2016 on the remaining half of the debt up to the date of eventual payment.*

*(B) The relief and remedies sought by Claimants in their Statement of Claim, consisting in:*

*(i) A declaration that over and above the outstanding balance of the Sale Amount of EUR 38,054,000 and interest accruing thereon, the Respondents are also jointly and severally liable for the payment of all damages suffered by the Claimants (or any of them) as a consequence of the Respondents' breach of their contractual obligations under the SPA, the Supplementary Agreement and/or any other ancillary agreement thereto;*

*(ii) The liquidation/quantification of the damages suffered by the Claimants (or any of them) in relation to the request above, if need be with the assistance of experts appointed by the Arbitral Tribunal;*

*(iii) A final award ordering the Respondents (or any of them) to pay the Claimants (or any of them) the amount of damages liquidated/quantified by the Arbitral Tribunal;*

*(iv) A final award ordering the Respondents (or any of them) to pay interest over the amount of damages liquidated / quantified by the Arbitral Tribunal at the highest rate permitted under Maltese law, which interest shall accrue as from the date of the award until the date of eventual payment;*

*Are dismissed in their entirety.*

*82. Costs are being awarded as follows :-*

*The Fees of the arbitral tribunal, as agreed between the parties of €180,000 (one hundred and eighty thousand euro) are to be borne as to 4/5ths (four fifths) by the Respondents and as to 1/5th (one fifth) by the Claimants;*

*The Fees and expenses payable to the Malta Arbitration Centre are to be borne as to 4/5ths (four fifths) by the Respondents and as to 1/5th (one fifth) by the Claimants;*

*The costs for legal representation of Claimants up to the amount of €381,100 (three hundred and eighty one thousand one hundred euro), which amount, is in the circumstances, deemed by the Arbitral Tribunal to be a reasonable ceiling are to be borne*

*as to 4/5ths (four fifths) by the Respondents and as to 1/5th (one fifth) by the Claimants; the costs for the legal representation of the Respondents are to be borne by them;*

*The travel and expenses of witnesses are to be borne by the Respondents.*

*Each party is to bear its own travel expenses.*

*Fees and expenses for logistical and translation services are to be borne 50% (fifty per centum) by Claimants and 50% (per centum) by Respondents.*

*The fees and costs of garnishee order and warrant of prohibitory injunction filed by Claimants before the First Hall of the Civil Court, bearing the reference numbers 1714/2018 and 3/2019 respectively (the "Precautionary Warrants") are to be borne by the Claimants. The said precautionary warrants were not formally included or notified as part of these arbitral proceedings and on the basis of the principle "Quod non est in actis non est in mundo" they cannot, at this stage, be taken cognizance of by the Tribunal. Accordingly, the Claimants' request for the fees and costs of the Precautionary Warrants is being dismissed.*

*There is being attached to this Award by way of Annex 1 a copy of the Award bearing today's date in the names SPI China (HK) Limited and SPI Energy Co. Ltd versus SinSin Europe Solar Asset Limited Partnership and SinSin Solar Capital Limited Partnership Arbitration Ref No I 5320/2018, which forms an integral part of this Award".*

**Facts**

2.      The facts of the present case are as follows. The parties had signed between themselves a Share Sale & Purchase Agreement on the 6th September 2014, in which the defendants had agreed to sell their shares in the company SinSin Renewable Investment Limited (C 60350) to the appellants according to those pacts and conditions agreed upon therein, including the obligation that any dispute arising between the parties should be decided by means of arbitration proceedings in Malta. A dispute arose between the parties after the defendants allegedly sold more than 65% of their shares in the aforementioned company to third parties, and they also allegedly failed to charge the appellants as was intended in clause 2.3 of the Share Sale and Purchase Agreement. On the part of the appellants, by means of a reply to the actions of the defendants, they unilaterally decided not to continue effecting payments for the acquisition of shares according to the abovementioned contract.

**Merits**

3.      The defendants therefore initiated Arbitration proceedings by presenting a Notice for Arbitration at the Centre on the 27th September 2018, along with the Claim in writing, wherein while declaring that their claim is one of a payment of the balance due in full in accordance with the Share Sale and Purchase Agreement, and also for payment of damages resulting from the default on the part of the appellants for their contractual obligations, they requested the following from the Tribunal:

1.      *A declaration that the Respondents are in breach of their contractual obligations under the SPA, the Supplementary Agreement and/or any ancillary agreement thereto;*

2.      *A declaration that the Respondents are jointly and severally liable towards both Claimants for the payment of the outstanding balance of the Sale Amount of Eur38,054,000 together with interests;*

3.      *A final award ordering the Respondents, jointly and severally between them, to pay the Claimants the outstanding balance of the Sale Amount of Eur38,054,000;*

4.      *A final award ordering the Respondents, jointly and severally between them, to pay interests at the rate of six per cent on the outstanding balance of the Sale Amount of Eur38,054,000, accruing from the date that such amount was to be paid until the date of eventual payment;*

5.      *A declaration that over and above the outstanding balance of the Sale Amount of Eur38,054,000 and interest accruing thereon, the Respondents are also jointly and severally liable for the payment of all damages suffered by the Claimants (or any of them) as a consequence of the Respondents' breach of their contractual obligations under the SPA, the Supplementary Agreement and/or any other ancillary agreement thereto;*

6.      *The liquidation/quantification of the damages suffered by the Claimants (or any of them) in relation to the request in (5) above, if need be with the assistance of experts appointed by the Arbitral Tribunal;*

7.      *A final award ordering the Respondents (or any of them) to pay Claimants (or any of them) the amounts of damages liquidated/quantified by the Arbitral Tribunal under request (6);*

8.      *A final award ordering the Respondents (or any of them) to pay interests over the amount of damages liquidated/quantified by the Arbitral Tribunal under request (6) at the highest rate permitted under Maltese law, which interests shall accrue as from the date of the award until the date of eventual payment; and*

9.      *A final award ordering the Respondents, jointly and severally between them, to pay all the costs of the Arbitration proceedings, including filing fees, arbitration fees and fees due to Claimants' counsel in accordance with the applicable rules"*

4.      The appellants upheld by means of a response which they filed on the 23rd November 2018, wherein they declared that they were contesting all of the allegations brought against them for the breach of their obligation to pay according to the Share Sale & Purchase

Agreement and the Supplementary Agreement, and also for the damages allegedly suffered
by the defendants.

## The Arbitral Award

5.    The Tribunal arrived at the arbitral award after it made the following considerations
relevant to this appeal:

### "XIV DECISION ON THE MERITS OF THE CLAIM.

*65. In essence the claims put forward by the Claimants in these proceedings are two,
namely a claim for payment of an amount allegedly owed to the Claimants by the
Respondents pursuant to the provisions of the SPA and the Supplementary Agreement
and also a claim for damages arising from the Respondents' failure to honour their
contractual obligations.*

*66. In accordance with clause 2.1 of the SPA, the Purchasers agreed and undertook to
pay the Vendors the total consideration of EUR 70,600,000 (seventy million six hundred
thousand euro) and which amount is defined as the "Sale Amount." The First Respondent
undertook to pay an amount equivalent to seventy per cent (70%) of the Sale Amount
payable in cash to the First Claimant whereas Solar Power Inc undertook to pay an
amount equivalent to thirty per cent (30%) of the Sale Amount to the Claimants, up to
their respective shareholdings in SinSin Renewable Investment Limited, payable by way
of its own stock in favour of the First Claimant.*

*67. Clause 2.2 of the SPA provides that the Purchasers shall, by no later than 30
September 2014, transfer to the Vendors a certain amount of the shares of the common
stock of Solar Power Inv in the value of thirty per cent (30%) of the Sale Amount. In or
around 2014 38,225,800 shares in Solar Power trading at US$ 0.717 per share were
transferred to the Vendors.*

*68. Clause 2.2.1 of the SPA then outlines the modalities regulating payment of the
remaining seventy per cent (70%) of the Sale Amount as follows :-*

*(a) Cash payment equivalent to five per cent (5%) of the Sale Amount by no later
than 30 October 2014;*
*(b) Cash payment equivalent to five per cent (5%) of the Sale Amount by no later
than 30 December 2014;*
*(c) Cash payment equivalent to thirty per cent (30%) of the Sale Amount by not
later than 30 November 2015;*
*(d) Cash payment equivalent to thirty per cent (30%) of the Sale Amount by not
later than 20 June 2016.*

*69. The Purchasers paid the first and second instalment for a combined sum of ten per cent (10%) of the Sale Amount but defaulted on the payments due by 30 November 2015 and 20 June 2016.*

*70. The Supplementary Agreement was entered into by the Parties on the 15th March 2016 and was clearly intended to address the Respondent's default in relation to the payments which fell due on 30 November 2015 and 20 June 2016. It was agreed that the Respondents would pay within ten days from execution of the said Supplementary Agreement the sum of EUR 2,000,000 and further pay an amount equal to the 2015 net profit of the 4SPVs by not later than 15th April 2016. It was further agreed that interest at the rate of six per cent (6%) shall accrue on the unpaid share transfer price.*

*71. There is no dispute between the Parties that the Respondents only paid the sum of EUR 4,340,000 to the Claimants after the conclusion of the Supplementary Agreement thus leaving an outstanding balance of Eur 38,054,000 of the Sale Amount and interest at the rate of six per cent (6%).*

*72. In their defence to the claims put forward by the Claimants in these proceedings, the Respondents have advanced the defence of* exceptio non adimpleti contractus *and accordingly they refute the claims advanced by the Claimants due to the material breaches which they allege were committed by the Claimants in the performance of their contractual obligations under the SPA. This defence mirrors entirely the claims which the Respondents have in turn advanced against the Claimants in the arbitration proceedings I 5320/2018.*

*73. In the Award being delivered concurrently in the arbitration proceedings I 5320/2018 the Tribunal has reached the conclusion that the Respondents in those proceedings (Claimants in the current proceedings) are not in breach of their contractual obligations in terms of the SPA based on applicable law, including the application of Maltese law rules on interpretation of contracts. The Tribunal further concluded that it does not find convincing evidence to the degree required by law to support the claims of the Claimants in arbitration proceedings I 5320/2018 (Respondents in the current proceedings) that SinSin acted in bad faith during the negotiation stage, execution stage or contract implementation stage whether in respect of the Share Sale and Purchase Agreement or the Supplementary Agreement. For the purposes of the present award, the Tribunal adopts the same conclusions in their entirety for the same reasoning and arguments adopted in the motivation of their award in arbitral proceedings I 5320/2018 and for ease of reference a copy of the said award is being attached hereto (Annex 1) and which is to be construed as an integral part of the present award. In the Tribunal's view, therefore, the Respondents defence to the claims of the Claimants for payment of the outstanding balance of the Sale Amount and interest is without merit and is being rejected in its entirety.*

*74. In addition to the payment of the outstanding balance due under the terms of the SPA and Supplementary Agreement together with interest, Claimants are also claiming payment of damages consisting in interest accruing over the loans granted by several banks to the Second Claimant and any bank charges, expenses and fees incurred in relation to the obtaining of such loans, which interest, bank charges and fees have been*

*specifically incurred as a result of the Respondents' failure to pay the amounts due in terms of the SPA and Supplementary Agreement.*

*75. Claimants argue that as a direct and immediate result of the Respondents' failure to comply with their payment obligations under the SPA and Supplementary Agreement, SinSin Solar Capital Limited Partnership had no option but to extend loan facilities with its banks with the obvious consequence that it incurred additional financing costs including fees in connection with the issuance of guarantee letters, apart from having had to part pay such loans out of its own funds.*

*76. In support of such claim, Claimants produced a witness statement of Mr. Yang Yisheng confirming that SinSin Solar Capital Limited Partnership had obtained a loan from China Minsheng Bank Hong Kong Branch for the sum of Eur 67,300,000 in order to finance the acquisition of the corporate structure owning the Greek PV Farms. Subsequently Sinsin Solar Capital Limited Partnership entered into new loan agreements in order to re-finance these facilities each year. It results that Sinsin Funds paid/borrowed from its limited partners XinXing Pipes the following amounts :-*

*i. RMB 3,682,320 to cover the guarantee letter fees incurred for the loans taken in 2015, which fees covered the guarantee letters which were issued;*

*ii. RMB 5,473,300.85 to cover fees incurred for the loans of Eur 12,300,000 and Eur 45,700,000, which fees covered guarantee letters;*

*iii. RMB 7,786.767.07 to cover guarantee letters fees for the 22nd June 2017 loan;*

*iv. RMB 9,249,290.58 to cover guarantee letters in respect of the loan taken in July 2019.*

*77. In terms of interest incurred on the bank loans for the period commencing after the date on which the balance of the purchase price should have been paid by Respondents, Claimants have quantified this part of their claim in the amount of EUR 1,810,825.88 as calculated from the 20th June 2016 to 31st December 2018 (Vide Paras. 26 and 29 of Mr. Yang's witness statement dated 18 February 2019). Additionally, Claimants claim further interest which accrued between 1st January 2019 and 30th October 2019 which amounts to EUR 540,566.17.*

*78. The Respondents have rebutted this claim for damages in addition to legal interest as legally inadmissible. Apart from issues concerning the actual value and quantification of this claim, the Respondents argue that the Claimants have not produced the evidence which was incumbent on them to produce in accordance with article 1047 of the Civil Code. In order to sustain a valid claim for such additional damages, Respondents argue that the Claimants had the onus of proving that SPI acted maliciously in its decision to stop making any payments to Claimants.*

*79. The Tribunal has taken cognizance of the evidence and the submission of the Parties on this specific claim put forward by the Claimants. The starting point in the consideration of such claim is the application and interpretation of article 1047 of the Civil Code which reads as follows :-*

"1. The damage which consists in depriving a person of the use of his own money shall be made good by the payment of interest at the rate of eight per cent a year.

2. If, however, the party causing the damage has acted maliciously, the Court may, according to circumstances, grant also to the injured party compensation for any other damage sustained by him, including every loss of earnings, if it is shown that the party causing the damage, by depriving the party injured of the use of his own money, had particularly the intention of causing him such other damage, or if such damage is the immediate and direct consequence of the injured party having been so deprived of the use of his own money."

*80. The Tribunal has not identified any evidence supporting the claim that the Respondents acted maliciously within the meaning of article 1047 of the Civil Code quoted above. Moreover the Claimants have not even made the slightest attempt to argue in their written submissions that the Respondents have in any way acted maliciously or with the specific intention of causing harm to the Claimants. In the absence of such evidence, this particular claim of the Claimants cannot succeed as it is not sufficient to prove that the Respondents were in default of their payment obligations under the terms of the SPA and the Supplementary Agreement. Indeed such default is covered by the contractual rate of interest agreed to by the parties to the SPA and Supplementary Agreement and is quite distinct and separate to the kind of damages being considered in this part of the Award.*

*For the above reasons, the Tribunal considers that this particular claim advanced by the Claimants is without merit and should be dismissed."*

## The Appeal

6.    The appellants presented their appeal on the 12th November 2020 wherein they are asking this Court to:

*"...if it pleases the Court to accept this appeal application and while cancelling, dismissing and revoking the arbitral award delivered on the 29th October 2020 in the acts of the Arbitration I.5532/2018 in the aforesaid names limitedly where it accepted the pleas numbered (i) to (iv) and (ix) of the plaintiff companies SinSin (as reproduced above), it decides to accept all of the pleas of the appellant companies as provided in their Statement of Defence while rejecting all of the claims of the defendant companies, with all the costs as calculated by the Arbitration Tribunal on page 20 of the arbitral award as well as the costs of this present appeal to be borne by the defendant companies"*

## The Reply to the Appeal

7.    The defendants responded by means of a reply presented on the 1st December 2020, wherein they submitted that the appeal lodged by the appellants should be dismissed for

reasons listed in the said reply, among which are of a preliminary nature which are: (a) the law does not accord any right of appeal from an international arbitration, unless the parties had reserved such a right of appeal in their arbitration agreement; (b) the parties, by means of clause 16.2 of the SPA, had excluded the right of appeal; (c) the appeal took place on the grounds of an appreciation of facts and not of law.

**Considerations of this Court**

8.      This Court is firstly going to consider the admissibility, or otherwise, of this present appeal, and if the preliminary submissions of the defendants are found to be valid, it shall invalidate the said appeal. The Court begins by considering that which was agreed between the parties[1], and here it makes reference to clause 16.2 of the Share Sale & Purchase Agreement which was brought in evidence by the appellants as Doc. A as part and parcel of their claim.

9.      Primarily, it must be said that clause 16.1 requires that the agreement be regulated and interpreted according to Maltese law. The subsequent clause 16.2 binds the parties to present any dispute which may arise between them with respect to the same agreement to arbitration procedures here in Malta so that this be decided by means of three arbiters, and this same clause also provides how these arbiters are to be chosen.

10.     By means of the same clause 16.2, the parties agreed that *"[T]he award of the arbitrators shall be final and binding upon the Parties"*. From what this clause provides, it results that the right of appeal was expressly excluded from the parties in a manner which was clear and unequivocal, so much so that there is no doubt as to their intention. Therefore, the Court considers that it was the parties themselves who renounced to their right of appeal from any arbitral award which could be delivered by a Tribunal in the case where a dispute arose between them, and given that from the outset the appellants' attempt was certainly going to fail, one cannot understand how the appellants could consider that this Court had any power to hear and decide their appeal. It considers that according to Maltese law, the

---

[1] Here the Court is taking into consideration that the appellant company SPI Energy Co. Ltd is the successor of Solar Power Inc. which appeared on the Share Sale & Purchase Agreement.

parties wished that the Court would regulate their agreement, and notably article 992 of the Civil Code provides that a contract has the strength of law between the parties and that the parties themselves alone can revoke it. Therefore, as long as the agreement between the parties remains the same, this Court cannot accept an appeal before it from any party.

**The Court decides**

**For the above reasons, the Court declares the appeal to be null and void, and refrains from taking further cognisance of it.**

**The costs of the said arbitral award are to remain as decided by the Tribunal, while those of the present appeal are to be borne by the appellants.**

Read.

**Hon. Dr Lawrence Mintoff LL.D.**
**Judge**

**Rosemarie Calleja**
**Deputy Registrar**

Appell Inferjuri Numru 78/2020 LM



MALTA

# QORTI TAL-APPELL
(Sede Inferjuri)

## ONOR. IMĦALLEF
## LAWRENCE MINTOFF

Seduta tat-12 ta' Novembru, 2021

Appell Inferjuri Numru 78/2020 LM

**SinSin Europe Solar Asset Limited Partnership
u SinSin Solar Capital Limited Partnership**
*('l-appellati')*

*vs.*

**SPI China (HK) Limited u SPI Energy Co. Ltd**
*('l-appellanti')*



**Il-Qorti,**

### Preliminari

1.     Dan huwa appell magħmul mis-soċjetajiet intimati **SPI China (HK) Limited u SPI Energy Co. Ltd** [minn issa 'l quddiem 'l-appellanti'] minn lodo arbitrali mogħti fl-Arbitraġġ numru l.5532/2018 tad-29 ta' Ottubru, 2020, [minn issa 'l quddiem 'il-lodo arbitrali'], mit-Tribunal tal-Arbitraġġ [minn issa 'l quddiem 'it-

Appell Inferjuri Numru 78/2020 LM

Tribunal'] fiċ-Ċentru Malti għall-Arbitraġġ [minn issa 'l quddiem 'iċ-Ċentru'], li permezz tiegħu ddeċieda t-talbiet tas-soċjetajiet rikorrenti **SinSin Europe Solar Asset Limited Partnership** u **SinSin Solar Capital Limited Partnership** [minn issa 'l quddiem 'l-appellati'] fil-konfront tagħhom kif ġej:

*"81. The Arbitration Tribunal therefore FINDS and AWARDS, as follows :-*

*(A) The relief and remedies sought by Claimants in their Statement of Claim, consisting in:*

- *(i) A declaration that the Respondents are in breach of their contractual obligations under the SPA, the Supplementary Agreement and/or any ancillary agreement thereto;*
- *(ii) A declaration that the Respondents are jointly and severally liable towards both Claimants for the payment of the outstanding balance of the Sale Amount of EUR 38,054,000 together with interest;*
- *(iii) A final award ordering the Respondents, jointly and severally between them, to pay the Claimants the outstanding balance of the Sale Amount of EUR 38,054,000;*
- *(iv) A final award ordering the Respondents jointly and severally between them to pay interest at the rate of six per cent (6%) on the outstanding balance of the Sale Amount of EUR 38,054,000 accruing from the date that such amount was to be paid until the date of the eventual payment;*

*Are acceded to in their entirety and accordingly the Tribunal orders and condemns the Respondents jointly and severally to pay the Claimants the sum of thirty eight million and fifty four thousand Euro (EUR 38,054,000) (the "Debt") together with interest at the rate of six per cent (6%) accruing from the 30 November 2015 on half of the Debt and from the 20 June 2016 on the remaining half of the debt up to the date of eventual payment.*

*(B) The relief and remedies sought by Claimants in their Statement of Claim, consisting in:*

- *(i) A declaration that over and above the outstanding balance of the Sale Amount of EUR 38,054,000 and interest accruing thereon, the Respondents are also jointly and severally liable for the payment of all damages suffered by the Claimants (or any of them) as a consequence of the Respondents'*

*breach of their contractual obligations under the SPA, the Supplementary Agreement and/or any other ancillary agreement thereto;*

*(ii) The liquidation/quantification of the damages suffered by the Claimants (or any of them) in relation to the request above, if need be with the assistance of experts appointed by the Arbitral Tribunal;*

*(iii) A final award ordering the Respondents (or any of them) to pay the Claimants (or any of them) the amount of damages liquidated/quantified by the Arbitral Tribunal;*

*(iv) A final award ordering the Respondents (or any of them) to pay interest over the amount of damages liquidated / quantified by the Arbitral Tribunal at the highest rate permitted under Maltese law, which interest shall accrue as from the date of the award until the date of eventual payment;*

*Are dismissed in their entirety.*

*82. Costs are being awarded as follows :-*

*The Fees of the arbitral tribunal, as agreed between the parties of €180,000 (one hundred and eighty thousand euro) are to be borne as to 4/5ths (four fifths) by the Respondents and as to 1/5th (one fifth) by the Claimants;*

*The Fees and expenses payable to the Malta Arbitration Centre are to be borne as to 4/5ths (four fifths) by the Respondents and as to 1/5th (one fifth) by the Claimants;*

*The costs for legal representation of Claimants up to the amount of €381,100 (three hundred and eighty one thousand one hundred euro), which amount, is in the circumstances, deemed by the Arbitral Tribunal to be a reasonable ceiling are to be borne as to 4/5ths (four fifths) by the Respondents and as to 1/5th (one fifth) by the Claimants; the costs for the legal representation of the Respondents are to be borne by them;*

*The travel and expenses of witnesses are to be borne by the Respondents.*

*Each party is to bear its own travel expenses.*

*Fees and expenses for logistical and translation services are to be borne 50% (fifty per centum) by Claimants and 50% (per centum) by Respondents.*

*The fees and costs of garnishee order and warrant of prohibitory injunction filed by Claimants before the First Hall of the Civil Court, bearing the reference numbers 1714/2018 and 3/2019 respectively (the "Precautionary Warrants") are to be borne by the Claimants. The said precautionary warrants were not formally included or notified as part of these arbitral proceedings and on the basis of the principle "Quod non est in actis non est in mundo" they cannot, at this stage, be taken cognizance of*

*by the Tribunal. Accordingly, the Claimants' request for the fees and costs of the*
*Precautionary Warrants is being dismissed.*

*There is being attached to this Award by way of Annex 1 a copy of the Award bearing*
*today's date in the names SPI China (HK) Limited and SPI Energy Co. Ltd versus SinSin*
*Europe Solar Asset Limited Partnership and SinSin Solar Capital Limited Partnership*
*Arbitration Ref No I 5320/2018, which forms an integral part of this Award".*

## Fatti

2.      Il-fatti tal-każ odjern fil-qosor huma dawn li ġejjin. Il-partijiet kienu
ffirmaw bejniethom *Share Sale & Purchase Agreement* fis-6 ta' Settembru,
2014, fejn l-appellati kienu ftehmu li ser ibiegħu l-ishma tagħhom fis-soċjetà
Sinsin Renewable Investment Limited (C 60350) lill-appellanti skont dawk il-
pattijiet u l-kundizzjonijiet hemm miftehma, inkluż l-obbligu li kull vertenza li
tinqala' bejniethom għandha tiġi deċiża permezz ta' proċeduri ta' arbitraġġ
hawn Malta. Ġara li nqala' xi diżgwid bejn il-partijiet wara li l-appellati
allegatament biegħu aktar minn 65% mill-ishma tagħhom fl-imsemmija
kumpannija lil terzi, u naqsu wkoll allegatament milli jinkarigaw lill-appellanti kif
maħsub permezz tal-klawsola 2.3 tax-*Share Sale and Purchase Agreement.* Min-
naħa tagħhom l-appellanti b'risposta għall-aġir tal-appellati, iddeċidew
unilateralment li ma jkomplux jagħmlu l-pagamenti għax-xiri tal-ishma skont kif
mitehma fl-imsemmi kuntratt.

## Mertu

3.      L-appellati għalhekk intavolaw proċeduri ta' Arbitraġġ bil-preżentata ta'
Avviż tal-Arbitraġġ fiċ-Ċentru fis-27 ta' Settembru, 2018, flimkien mat-Talba bil-

Miktub, fejn filwaqt li ddikjaraw li l-pretensjoni tagħhom kienet waħda ta' ħlas ta' bilanċ dovut fuq ammont sħiħ skont kif patwit permezz tax-*Share Sale and Purchase Agreement,* u anki ta' ħlas ta' danni riżultanti mill-inadempiment min-naħa tal-appellanti tal-obbligi kuntrattwali tagħhom, talbu s-segwenti mit-Tribunal:

1. *A declaration that the Respondents are in breach of their contractual obligations under the SPA, the Supplementary Agreement and/or any ancillary agreement thereto;*

2. *A declaration that the Respondents are jointly and severally liable towards both Claimants for the payment of the outstanding balance of the Sale Amount of Eur38,054,000 together with interests;*

3. *A final award ordering the Respondents, jointly and severally between them, to pay the Claimants the outstanding balance of the Sale Amount of Eur38,054,000;*

4. *A final award ordering the Respondents, jointly and severally between them, to pay interests at the rate of six per cent on the outstanding balance of the Sale Amount of Eur38,054,000, accruing from the date that such amount was to be paid until the date of eventual payment;*

5. *A declaration that over and above the outstanding balance of the Sale Amount of Eur38,054,000 and interest accruing thereon, the Respondents are also jointly and severally liable for the payment of all damages suffered by the Claimants (or any of them) as a consequence of the Respondents' breach of their contractual obligations under the SPA, the Supplementary Agreement and/or any other ancillary agreement thereto;*

6. *The liquidation/quantification of the damages suffered by the Claimants (or any of them) in relation to the request in (5) above, if need be with the assistance of experts appointed by the Arbitral Tribunal;*

7. *A final award ordering the Respondents (or any of them) to pay Claimants (or any of them) the amounts of damages liquidated/quantified by the Arbitral Tribunal under request (6);*

8. *A final award ordering the Respondents (or any of them) to pay interests over the amount of damages liquidated/quantified by the Arbitral Tribunal under request (6) at the highest rate permitted under Maltese law, which interests*

> *shall accrue as from the date of the award until the date of eventual payment;*
> *and*
>
> 9. *A final award ordering the Respondents, jointly and severally between them, to*
>    *pay all the costs of the Arbitration proceedings, including filing fees, arbitration*
>    *fees and fees due to Claimants' counsel in accordance with the applicable rules"*

4.     L-appellanti laqgħu permezz ta' tweġiba li huma ntavolaw fit-23 ta'
Novembru, 2018, fejn iddikjaraw li huma kienu qegħdin jikkontestaw l-
allegazzjonijiet kollha miġjuba kontrihom mill-appellanti tal-inadempiment tal-
obbligu tal-ħlas tagħhom skont ix-*Share Sale & Purchase Agreement* u s-
*Supplementary Agreement,* u anki tad-danni allegatament sofferti mill-
appellati.

## Il-Lodo Arbitrali

5.     It-Tribunal wasal għal-lodo arbitrali wara li għamel is-segwenti
konsiderazzjonijiet rilevanti għal dan l-appell:

*"XIV    DECISION ON THE MERITS OF THE CLAIM.*

*65. In essence the claims put forward by the Claimants in these proceedings are two,*
*namely a claim for payment of an amount allegedly owed to the Claimants by the*
*Respondents pursuant to the provisions of the SPA and the Supplementary Agreement*
*and also a claim for damages arising from the Respondents' failure to honour their*
*contractual obligations.*

*66. In accordance with clause 2.1 of the SPA, the Purchasers agreed and undertook*
*to pay the Vendors the total consideration of EUR 70,600,000 (seventy million six*
*hundred thousand euro) and which amount is defined as the "Sale Amount." The First*
*Respondent undertook to pay an amount equivalent to seventy per cent (70%) of the*
*Sale Amount payable in cash to the First Claimant whereas Solar Power Inc undertook*
*to pay an amount equivalent to thirty per cent (30%) of the Sale Amount to the*

*Claimants, up to their respective shareholdings in SinSin Renewable Investment Limited, payable by way of its own stock in favour of the First Claimant.*

*67.  Clause 2.2 of the SPA provides that the Purchasers shall, by no later than 30 September 2014, transfer to the Vendors a certain amount of the shares of the common stock of Solar Power Inv in the value of thirty per cent (30%) of the Sale Amount. In or around 2014 38,225,800 shares in Solar Power trading at US$ 0.717 per share were transferred to the Vendors.*

*68.  Clause 2.2.1 of the SPA then outlines the modalities regulating payment of the remaining seventy per cent (70%) of the Sale Amount as follows :-*

*(a) Cash payment equivalent to five per cent (5%) of the Sale Amount by no later than 30 October 2014;*

*(b) Cash payment equivalent to five per cent (5%) of the Sale Amount by no later than 30 December 2014;*

*(c) Cash payment equivalent to thirty per cent (30%) of the Sale Amount by not later than 30 November 2015;*

*(d) Cash payment equivalent to thirty per cent (30%) of the Sale Amount by not later than 20 June 2016.*

*69.  The Purchasers paid the first and second instalment for a combined sum of ten per cent (10%) of the Sale Amount but defaulted on the payments due by 30 November 2015 and 20 June 2016.*

*70.  The Supplementary Agreement was entered into by the Parties on the 15th March 2016 and was clearly intended to address the Respondent's default in relation to the payments which fell due on 30 November 2015 and 20 June 2016. It was agreed that the Respondents would pay within ten days from execution of the said Supplementary Agreement the sum of EUR 2,000,000 and further pay an amount equal to the 2015 net profit of the 4SPVs by not later than 15th April 2016. It was further agreed that interest at the rate of six per cent (6%) shall accrue on the unpaid share transfer price.*

*71.  There is no dispute between the Parties that the Respondents only paid the sum of EUR 4,340,000 to the Claimants after the conclusion of the Supplementary Agreement thus leaving an outstanding balance of Eur 38,054,000 of the Sale Amount and interest at the rate of six per cent (6%).*

*72.  In their defence to the claims put forward by the Claimants in these proceedings, the Respondents have advanced the defence of* exceptio non adimpleti contractus *and accordingly they refute the claims advanced by the Claimants due to the material*

*breaches which they allege were committed by the Claimants in the performance of their contractual obligations under the SPA. This defence mirrors entirely the claims which the Respondents have in turn advanced against the Claimants in the arbitration proceedings I 5320/2018.*

*73.   In the Award being delivered concurrently in the arbitration proceedings I 5320/2018 the Tribunal has reached the conclusion that the Respondents in those proceedings (Claimants in the current proceedings) are not in breach of their contractual obligations in terms of the SPA based on applicable law, including the application of Maltese law rules on interpretation of contracts. The Tribunal further concluded that it does not find convincing evidence to the degree required by law to support the claims of the Claimants in arbitration proceedings I 5320/2018 (Respondents in the current proceedings) that SinSin acted in bad faith during the negotiation stage, execution stage or contract implementation stage whether in respect of the Share Sale and Purchase Agreement or the Supplementary Agreement. For the purposes of the present award, the Tribunal adopts the same conclusions in their entirety for the same reasoning and arguments adopted in the motivation of their award in arbitral proceedings I 5320/2018 and for ease of reference a copy of the said award is being attached hereto (Annex 1) and which is to be construed as an integral part of the present award. In the Tribunal's view, therefore, the Respondents defence to the claims of the Claimants for payment of the outstanding balance of the Sale Amount and interest is without merit and is being rejected in its entirety.*

*74. In addition to the payment of the outstanding balance due under the terms of the SPA and Supplementary Agreement together with interest, Claimants are also claiming payment of damages consisting in interest accruing over the loans granted by several banks to the Second Claimant and any bank charges, expenses and fees incurred in relation to the obtaining of such loans, which interest, bank charges and fees have been specifically incurred as a result of the Respondents' failure to pay the amounts due in terms of the SPA and Supplementary Agreement.*

*75. Claimants argue that as a direct and immediate result of the Respondents' failure to comply with their payment obligations under the SPA and Supplementary Agreement, SinSin Solar Capital Limited Partnership had no option but to extend loan facilities with its banks with the obvious consequence that it incurred additional financing costs including fees in connection with the issuance of guarantee letters, apart from having had to part pay such loans out of its own funds.*

*76. In support of such claim, Claimants produced a witness statement of Mr. Yang Yisheng confirming that SinSin Solar Capital Limited Partnership had obtained a loan*

*from China Minsheng Bank Hong Kong Branch for the sum of Eur 67,300,000 in order to finance the acquisition of the corporate structure owning the Greek PV Farms. Subsequently Sinsin Solar Capital Limited Partnership entered into new loan agreements in order to re-finance these facilities each year. It results that Sinsin Funds paid/borrowed from its limited partners XinXing Pipes the following amounts :-*

*i. RMB 3,682,320 to cover the guarantee letter fees incurred for the loans taken in 2015, which fees covered the guarantee letters which were issued;*

*ii. RMB 5,473,300.85 to cover fees incurred for the loans of Eur 12,300,000 and Eur 45,700,000, which fees covered guarantee letters;*

*iii. RMB 7,786.767.07 to cover guarantee letters fees for the 22nd June 2017 loan;*

*iv. RMB 9,249,290.58 to cover guarantee letters in respect of the loan taken in July 2019.*

*77. In terms of interest incurred on the bank loans for the period commencing after the date on which the balance of the purchase price should have been paid by Respondents, Claimants have quantified this part of their claim in the amount of EUR 1,810,825.88 as calculated from the 20th June 2016 to 31st December 2018 (Vide Paras. 26 and 29 of Mr. Yang's witness statement dated 18 February 2019). Additionally, Claimants claim further interest which accrued between 1st January 2019 and 30th October 2019 which amounts to EUR 540,566.17.*

*78. The Respondents have rebutted this claim for damages in addition to legal interest as legally inadmissible. Apart from issues concerning the actual value and quantification of this claim, the Respondents argue that the Claimants have not produced the evidence which was incumbent on them to produce in accordance with article 1047 of the Civil Code. In order to sustain a valid claim for such additional damages, Respondents argue that the Claimants had the onus of proving that SPI acted maliciously in its decision to stop making any payments to Claimants.*

*79. The Tribunal has taken cognizance of the evidence and the submission of the Parties on this specific claim put forward by the Claimants. The starting point in the consideration of such claim is the application and interpretation of article 1047 of the Civil Code which reads as follows :-*

"1. The damage which consists in depriving a person of the use of his own money shall be made good by the payment of interest at the rate of eight per cent a year.

2. If, however, the party causing the damage has acted maliciously, the Court may, according to circumstances, grant also to the injured party compensation for any other damage sustained by him, including every loss of earnings, if it is shown that the party causing the damage, by depriving the party injured of the use of his

Appell Inferjuri Numru 78/2020 LM

own money, had particularly the intention of causing him such other damage, or if such damage is the immediate and direct consequence of the injured party having been so deprived of the use of his own money."

*80.   The Tribunal has not identified any evidence supporting the claim that the Respondents acted maliciously within the meaning of article 1047 of the Civil Code quoted above. Moreover the Claimants have not even made the slightest attempt to argue in their written submissions that the Respondents have in any way acted maliciously or with the specific intention of causing harm to the Claimants. In the absence of such evidence, this particular claim of the Claimants cannot succeed as it is not sufficient to prove that the Respondents were in default of their payment obligations under the terms of the SPA and the Supplementary Agreement. Indeed such default is covered by the contractual rate of interest agreed to by the parties to the SPA and Supplementary Agreement and is quite distinct and separate to the kind of damages being considered in this part of the Award.*

*For the above reasons, the Tribunal considers that this particular claim advanced by the Claimants is without merit and should be dismissed."*

## L-Appell

6.     L-appellanti ntavolaw l-appell tagħhom fit-12 ta' Novembru, 2020 fejn qegħdin jitolbu lil din il-Qorti sabiex:

*"...jogħġobha tilqa' dan ir-rikors tal-appell u filwaqt li tħassar, twarrab u tirrevoka l-lodo arbitrali mogħti fid-29 ta' Ottubru 2020 fl-atti tal-Arbitragg I.5532/2018 fl-ismijiet premessi limitatament fejn din laqgħet it-talbiet numerati (i) sa (iv) u dik numerata (ix) tas-soċjetajiet appellati SinSin (kif riprodotti hawn fuq), taqta' u tiddeċiedi billi tilqa' l-eċċezzjonijiet kollha tas-soċjetajiet esponenti appellanti kif dedotti fl-*Istatement of Defence *tagħhom filwaqt illi tiċħad it-talbiet kollha tas-soċjetajiet appellati bl-ispejjez kollha hekk kif kalkolati mit-Tribunal Arbitrali a fol. 20 tal-lodo arbitrali tiegħu kif ukoll bl-ispejjez tal-appell odjern kontra s-soċjetajiet appellati"*

Appell Inferjuri Numru 78/2020 LM

## Ir-Risposta tal-Appell

7.      L-appellati wieġbu permezz ta' risposta ippreżentata fl-1 ta' Diċembru.
2020, fejn issottomettew li għandu jiġi miċħud l-appell interpost mill-appellanti,
u dan għar-raġunijiet li huma jfissru fl-imsemmija risposta fosthom dawk ta'
natura preliminari u li huma: (a) il-liġi ma kienet takkorda l-ebda dritt t'appell
minn arbitraġġ internazzjonali, sakemm il-partijiet ma jkunux irriżervaw dak id-
dritt ta' appell fil-klawsola kompromissorja ta' bejniethom; (b) il-partijiet
permezz tal-klawsola 16.2 tal-SPA kienu eskludew id-dritt t'appell; (ċ) l-appell
sar fuq apprezzament ta' fatti u mhux ta' liġi.


## Konsiderazzjonijiet ta' din il-Qorti

8.      Din il-Qorti ser tgħaddi qabel xejn sabiex tikkonsidra l-ammissibilità o
meno tal-appell odjern, u jekk is-sottomissjonijiet preliminari tal-appellati
jinstabu li huma validi, għandhom iġibu fix-xejn l-imsemmi appell. Il-Qorti tibda
billi tikkonsidra dak li saħansitra ġie patwit bejn il-partijiet[1], u hawn tagħmel
riferiment għall-klawsola 16.2 tax-*Share Sale & Purchase Agreement* li ġie esebit
mill-appellanti bħala Dok. A flimkien mat-Talba.

9.      Għandu jingħad qabel xejn li l-klawsola 16.1 titlob li l-ftehim għandu jiġi
regolat u nterpretat skont il-liġi Maltija. Il-klawsola sussegwenti 16.2 torbot lill-
partijiet sabiex jippreżentaw kull vertenza li tista' tinqala' bejniethom fir-
rigward tal-istess ftehim, għall-proċeduri ta' arbitraġġ hawn Malta sabiex din tiġi

---

[1] Hawn il-Qorti qegħda tiehu in konsiderazzjoni li s-soċjetà appellanta SPI Energy Co. Ltd hija s-suċċessur ta' Solar Power Inc.
li dehret fuq ix-*Share Sale & Purchase Agreement*.

Qrati tal-Ġustizzja

deċiża permezz ta' tliet arbitri, u dan filwaqt li l-istess klawsola tipprovdi wkoll kif għandhom jiġu magħżula l-imsemmija arbitri.

10.     Permezz tal-istess klawsola 16.2, il-partijiet ftehmu li *"[T]he award of the arbitrators shall be final and binding upon the Parties"*. Jirriżulta minn dak li tipprovdi għalih din il-klawsola, li d-dritt tal-appell ġie espressament eskluż mill-partijiet b'mod ċar u inekwivoku, tant li m'hemm l-ebda dubju dwar dik li kienet l-intenzjoni tagħhom. Għalhekk il-Qorti tikkonsidra li kienu l-partijiet stess li rrinunzjaw għad-dritt tagħhom ta' appell minn kull lodo arbitrali li seta' jingħata mit-Tribunal f'każ fejn jinqala' xi diżgwid bejniethom, u għalhekk it-tentattiv tal-appellanti mill-ewwel kien ser ifalli biċ-ċert, tant li ma tista' bl-ebda mod tifhem kif l-appellanti setgħu jikkonsidraw li din il-Qorti kellha xi setgħa li tisma' u tiddeċiedi l-appell tagħhom. Tqis li skont il-liġi Maltija, li l-partijiet xtaqu li għandha tirregola l-ftehim ta' bejniethom, u senjatament l-artikolu 992 tal-Kodiċi Ċivili jipprovdi li kuntratt għandu s-saħħa ta' liġi bejn il-partijiet u li huma biss l-istess partijiet li jistgħu iħassruh. Għaldaqstant la darba l-ftehim ta' bejn il-partijiet jibqa' dak li hu, din il-Qorti ma tistax tilqa' quddiemha appell minn xi parti.

## Decide

Għar-raġunijiet premessi l-Qorti tiddikjara l-appell bħala irritu u null, u tastjeni milli tieħu konjizzjoni ulterjuri tiegħu.

L-ispejjeż ta' l-imsemmi lodo arbitrali jibqgħu kif deċiżi mit-Tribunal, filwaqt li dawk tal-appell odjern għandhom jitħallsu mill-appellanti.

Appell Inferjuri Numru 78/2020 LM

Moqrija.

Onor. Dr Lawrence Mintoff LL.D.
Imħallef

Rosemarie Calleja
Deputat Reġistratur

Vera Kopja

Rose Marie Vella
Deputat Registratur