# Exhibit C

Yan Ge, Cal. Bar No. 236566
KING & WOOD MALLESONS LLP
2500 Sand Hill Road, Suite 111
Menlo Park, CA 94025
Telephone: (650) 858-1285
Facsimile: (650) 858-1226
geyan@cn.kwm.com

M.M. Utterback (*pro hac vice*)
KING & WOOD MALLESONS LLP
500 5th Ave, 50th Floor
New York, NY 10110
Telephone: (212) 319-4755
Facsimile: (917) 591-8167
meg.utterback@us.kwm.com

*Attorneys for Petitioners*
*SinSin Europe Solar Asset Limited Partnership and SinSin Solar Capital Limited Partnership*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| SINSIN EUROPE SOLAR ASSET LIMITED PARTNERSHIP and SINSIN SOLAR CAPITAL LIMITED PARTNERSHIP, <br><br> Petitioners, <br><br> v. <br><br> SPI ENERGY CO. LTD, <br><br> Respondent. | Case No. 2:22-cv-01991-MCE-JDP <br><br> **AMENDED PETITION AND MOTION FOR** <br><br> **(1) CONFIRMATION OF FOREIGN ARBITRAL AWARDS;** <br><br> **(2) ENTRY OF JUDGMENT;** <br><br> **(3) INJUNCTIVE RELIEF; AND** <br><br> **(4) ATTORNEYS' FEES INCURRED IN CONFIRMING THE AWARDS** |

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................ 1

THE PARTIES ................................................................................................... 2

JURISDICTION AND VENUE .......................................................................... 2

STATEMENT OF FACTS .................................................................................. 3

   I.   The Arbitrations and Malta Judgments ................................................. 3

   II.   Respondent's Financial Status After the Awards ................................... 7

ARGUMENT ...................................................................................................... 9

   I.   The Awards Should be Confirmed Pursuant to the New York Convention ................ 9

   II.   Judgment Should be Entered Concurrently with Confirmation of the Awards .... 11

   III.   Injunctive Relief Should Be Entered to Stop Respondent from Dissipating Assets ............................ 12

   IV.   Petitioners Should Be Awarded Their Fees Incurred in Confirming the Awards. 14

PRAYER FOR RELIEF .................................................................................... 17

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Cypress Equip. Fund, Ltd. v. Royal Equip., Inc.*,
    No. C-96-3783 MMC, 1997 WL 106137 (N.D. Cal. Jan. 13, 1997) ........................................10

*Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*,
    40 F.4th 56 (2d Cir. 2022) ........................................16

*Gen. Marine II, LLC v. Kelly*,
    No. 3:21-CV-1425-W-DEB, 2022 WL 4448003 (S.D. Cal. Sept. 27, 2022) ........................15

*Iraq Telecom Ltd. v. IBL Bank S.A.L.*,
    597 F. Supp. 3d 657 (S.D.N.Y. 2022) ........................................11

*Ministry of Def. of the Islamic Republic of Iran v. Gould, Inc.*,
    969 F.2d 764 (9th Cir. 1992) ........................................10, 11

*Ministry of Def. & Support for Armed Forces of Islamic Republic of Iran v. Cubic Def. Sys., Inc.*, No. 98-CV-1165-B DHB, 2013 WL 55828 (S.D. Cal. Jan. 3, 2013) ........................................16

*Ministry of Defense and Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Defense Systems, Inc.*,
    665 F.3d 1091 (9th Cir. 2011) ........................................12, 14

*Pharmaniaga Berhad v. E*HealthLine.com, Inc.*,
    344 F. Supp. 3d 1136 (MCE) (E.D. Cal. 2018) ........................................12, 16

*Polimaster Ltd. v. RAE Sys., Inc.*,
    623 F.3d 832 (9th Cir. 2010) ........................................10, 11

*Scherk v. Alberto-Culver Co.*,
    417 U.S. 506 (1974) ........................................10

*Shanghai Lan Cai Asset Mgmt. Co, Ltd. v. Jia Yueting*,
    No. 218CV10255SJOMRWX, 2018 WL 10151034 (C.D. Cal. Dec. 13, 2018) ....................14

*Shanghai Lan Cai Asset Mgmt. Co. v. Jia Yueting*,
    No. 218CV10255SJOMRWX, 2019 WL 11273229 (C.D. Cal. Sept. 3, 2019) ....................14

*Sheet Metal Workers' Int'l Ass'n Loc. Union No. 359 v. Madison Indus., Inc. of Arizona*,
    84 F.3d 1186 (9th Cir. 1996) ........................................14

*Smagin v. Yegiazaryan*,
    No. 2:14-CV-09764-R, 2016 WL 11676607 (C.D. Cal. Nov. 14, 2016), *aff'd*,
    733 F. App'x 393 (9th Cir. 2018) ........................................12, 14

*Vivi Robyn Stafford v. Baart Behav. Health Servs., Inc.*,
    No. CV 15-252-GW, 2020 WL 9172809 (C.D. Cal. Mar. 11, 2020), *aff'd sub
    nom. Stafford v. BAART Behav. Health Servs., Inc.*, 855 F. App'x 426 (9th Cir.
    2021) .................................................................................................................13

**Statutes**

9 U.S.C. § 6 ...........................................................................................................10

9 U.S.C. § 202 .........................................................................................................2

9 U.S.C. § 203 ......................................................................................................2, 3

9 U.S.C. § 204 .........................................................................................................3

9 U.S.C. § 207 .......................................................................................................10

9 U.S.C. § 208 .......................................................................................................10

28 U.S.C. § 1331 .....................................................................................................3

28 U.S.C. § 1332(a)(2) ............................................................................................3

28 U.S.C. § 1391(b)(1) ............................................................................................3

28 U.S.C. § 1391(b)(2) ............................................................................................3

FAA ....................................................................................................................2, 10

FAA Chapter 1 ......................................................................................................10

FAA Chapter 2 ......................................................................................................10

Federal Arbitration Act, 9 U.S.C. § 201 *et seq.* ....................................................1

# INTRODUCTION

1.    This is an action to confirm two arbitral awards pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38 ("**New York Convention**"), as implemented by the Federal Arbitration Act ("**FAA**"), 9 U.S.C. § 201 *et seq.*, as well as to seek injunctive relief and attorneys' fees. Beginning in March 2018, Petitioners SinSin Europe Solar Asset Limited Partnership ("**SinSin Europe**") and SinSin Solar Capital Limited Partnership ("**SinSin Solar**") (collectively, "**Petitioners**" or "**SinSin**") and SPI Energy Co. Ltd ("**SPI Energy**" or "**Respondent**") and SPI China (HK) Limited ("**SPI China**") (collectively, "**SPI**") participated in two arbitrations pursuant to an arbitration clause contained in the parties' Share Sale and Purchase Agreement dated September 6, 2014 ("**SPA**").

2.    Both arbitrations involved the same four parties, were administered by the Malta Arbitration Centre, and were presided over by the same three-member tribunal, which issued the two Awards on October 29, 2020, the first in Malta Arbitration Centre Arbitration, Reference No. I 5320/2018 (the "**First Award**"), and the second in Malta Arbitration Centre Arbitration, Reference No. I 5532/2018 (the "**Second Award**") (collectively, the "**Awards**"). *See* **Exhibits A and B**.[1]

3.    The SPA provides that any awards of the arbitrators "shall be final and binding upon the Parties." *See* **Exhibit C.**

4.    SPI challenged both Awards in Maltese court. On November 12, 2021, the Malta Court of Appeal (Inferior Jurisdiction) (the "**Malta Court**") ruled that both appeals were null and void (the "**Malta Lower Court Judgments**"). *See* **Exhibits D and E.**

5.    SPI then sought new trials in the two court actions challenging the Awards. On March 30, 2022, the Chief Justice of the Malta Court of Appeal (Inferior Jurisdiction) dismissed SPI's requests in both actions (collectively with the Malta Lower Court Judgments, the "**Malta Judgments**"). *See* **Exhibits F** and **G.**

6.    Confirmation of the two Awards is proper under the New York Convention and the

---

[1] All "Exhibits" are references to the exhibits attached to the Declaration of Xinyu Li ("**Li Decl.**") filed herewith.

FAA, both of which embody a policy favoring arbitration of disputes and leave the Court little discretion in declining to recognize and enforce arbitral awards. This is particularly true where, as here, the arbitral awards have been challenged and upheld by a court at the seat of arbitration.

7. Further, this Court should grant worldwide injunctive relief to stop Respondent from dissipating its assets, and grant Petitioners their attorneys' fees incurred in confirming the Awards.

### THE PARTIES

8. Petitioners SinSin Europe and SinSin Solar are both Cayman Islands limited partnerships registered in the Cayman Islands. *See* **Exhibits H** and **I** (Petitioners' Certificates of Registration of Exempted Limited Partnerships).

9. Respondent SPI Energy is a Cayman Islands corporation with its principal place of business in McClellan Park, California. SPI Energy is a global provider of photovoltaic solutions which is listed on the Nasdaq Stock Market. As the result of a 2015 merger, SPI Energy is the successor of Solar Power, Inc., a signatory of the SPA.

10. Non-party SPI China (HK) Limited is a Hong Kong corporation with its principal place of business in Hong Kong.

11. Along with SPI China, SPI Energy is in the business of providing photovoltaic solutions for business, including developing, owning, and operating solar photovoltaic projects and providing engineering, procurement, and construction ("**EPC**") contractor services to photovoltaic projects.

### JURISDICTION AND VENUE

12. This Court has subject-matter jurisdiction pursuant to 9 U.S.C. § 203, which provides that the United States district courts "shall have original jurisdiction" over actions that fall under the New York Convention. This action falls under the New York Convention because it concerns arbitral awards "arising out of a legal relationship … which is considered as commercial" and are not awards "arising out of such a relationship which is entirely between citizens of the United States." 9 U.S.C. § 202. It is undisputed that the parties' relationship is commercial and that Petitioners are not United States' citizens. Subject-matter jurisdiction also is proper pursuant

to 28 U.S.C. § 1331, as this action is "deemed to arise under the laws and treaties of the United States," as stated in 9 U.S.C. § 203. Subject-matter jurisdiction also is proper pursuant to 28 U.S.C. § 1332(a)(2) as the amount in controversy exceeds $75,000, and SPI Energy is a citizen of the State of California based on its principal place of business while Petitioners are both subjects of a foreign state.

13.    This Court has personal jurisdiction over SPI Energy because its corporate headquarters are in this District, namely at 4803 Urbani Avenue, McClellan Park, California 95652.

14.    Venue in this Court is proper pursuant to 9 U.S.C. § 204 because, save for the arbitration agreement, an action with respect to the controversy between the parties could be brought here. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because SPI Energy resides in this District. Venue is also proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the property that is the subject of this action is situated in this District.

## STATEMENT OF FACTS

### I.    The Arbitrations and Malta Judgments

15.    The two arbitrations that resulted in the Awards arose from the SPA, which the parties entered into on September 6, 2014. Pursuant to the SPA, Petitioners agreed to sell all of the shares of Sinsin Renewable Investment Limited, a company registered in Malta, to Solar Power, Inc. and SPI China for a total consideration of €70,660,000. *See generally* Ex. C.

16.    The SPA is governed by Maltese law and contains the following arbitration clause:

> Any question or difference which may arise concerning the construction, meaning or effect of this Agreement or concerning the rights, duties, obligations and liabilities of the Parties hereunder, or any other matter arising out of or in connection with this Agreement, shall be referred to and settled by arbitration. The venue of such arbitration shall be Malta. The number of arbitrators shall be three (3). The appointing authority shall be the Malta Arbitration Centre save as provided below. Each Party to the arbitration proceedings shall appoint one (1) arbitrator. If within fifteen (15) days after receipt of the claimant's notification of the appointment of an arbitrator the respondent has not notified the claimant of the name of the arbitrator he appoints, the second arbitrator shall be appointed by the Malta Arbitration Centre. The two (2) arbitrators thus appointed shall choose the third arbitrator who will act as the presiding arbitrator of the tribunal. If within fifteen (15) days after the appointment of the second arbitrator, the two arbitrators have not agreed upon the choice of the presiding arbitrator, then, at the request of either Party to the arbitration proceedings, the presiding arbitrator shall be appointed by the Malta Arbitration Centre. The language of the arbitration shall be English. The award of the arbitrators shall be final

and binding upon the Parties. Any reference under this sub-clause 16.2 shall be deemed to be a reference to arbitration within the meaning of Part IV of the Arbitration Act (Chapter 387 of the Laws of Malta).

*See* Ex. C at 16:16.1-16:16.2.[2]

17.     After a merger in 2015, SPI Energy assumed the obligation to pay the consideration owed by Solar Power, Inc.

18.     Despite failing to pay Petitioners most of the consideration owed under the SPA, SPI initiated Arbitration Reference No. I 5320/2018 (the "**First Arbitration**") in March 2018, asserting a claim for damages against Petitioners based on an alleged breach of the SPA and alleged bad faith by Petitioners with respect to a provision of the SPA related to Petitioners hiring SPI as EPC contractors on future projects.

19.     Following preliminary proceedings in the First Arbitration, Petitioners initiated a second arbitration (Arbitration Reference No. I 5532/2018) in September 2018, seeking payment of the outstanding consideration due (plus interest) as well as all damages suffered by Petitioners as a consequence of SPI's breach of the SPA and other subsequent agreements between the parties.

20.     Detailed findings of fact related to the parties' disputes can be found in the First and Second Awards. *See* Ex. A at 20:92-24:117; Ex. B at 15:65-18:80; *see also* Ex. B at 20:82 (incorporating the First Award as an integral part of the Second Award).

21.     The same three-member tribunal was appointed in both arbitrations and in accordance with the procedures called for by the SPA.

22.     Both arbitrations were thoroughly litigated.

23.     On December 10, 2018, during the arbitrations, Respondent announced that it had entered into a share purchase agreement with an affiliate of Tracy Zhoushan ("**Agreement**"), the spouse of Xiaofeng Peng, Respondent's Chairman of the Board of Directors and Chief Executive Officer. The Agreement provided that Respondent would sell 100% of the shares of SPI China (HK) Limited, which holds all of Respondent's assets and liabilities related to its business in China, for $1. *See* SPI ENERGY CO., LTD. ANNOUNCES THE AMENDMENTS AND CLOSING OF DEFINITIVE

---

[2] Citations to the Exhibits are identified by page and paragraph numbers where applicable.

AMENDED PETITION AND MOTION TO CONFIRM ARBITRAL AWARDS          Case No. 2:22-CV-01991-MCE-JDP

AGREEMENT FOR THE DISPOSITION OF ITS CHINESE BUSINESS (2018), https://www.globenewswire.com/news-release/2018/12/10/1664142/0/en/SPI-Energy-Co-Ltd-Announces-the-Amendments-and-Closing-of-Definitive-Agreement-for-the-Disposition-of-its-Chinese-Business.html (last visited Mar 21, 2023). The CEO, Mr. Peng, notably is listed on the China Supreme Court's List of Discredited Parties Subject to Enforcement for failure to pay debts and judgments rendered against him personally. *See* Li Decl. at ¶ 15; *see also* **Exhibit J**.

24.     On December 20, 2018, following agreement of the parties, the tribunal issued a procedural order in each arbitration mandating that testimony and evidence from each arbitration shall form part of the evidence of the other arbitration. Thereafter, the tribunal rendered seven further procedural orders that applied to both arbitrations. *See* Ex. A at 4:10-5:10; Ex. B at 3:2-4:2.

25.     The tribunal heard from over a dozen fact and expert witnesses, and each party was given the opportunity to cross-examine the other party's witnesses. *See* Ex. A at 18:79–19:88; Ex. B at 13:51-14:61.

26.     The parties declared that they had no further evidence. *See* Ex. A at 19:89; Ex. B at 15:62.

27.     On October 29, 2020, the tribunal issued two Awards totaling 64 pages and detailing the procedural history of the arbitrations and each side's statements of fact and legal arguments. In each Award, the tribunal carefully considered those arguments and the plain language of the SPA and analyzed them under Maltese law. *See* Ex. A at 24:118-43:163; Ex. B at 15:65–18:80.

28.     In the First Arbitration, the tribunal found that "it cannot be concluded that [Petitioners] are in breach of their contractual obligations in terms of the [SPA]" and that SPI had failed to present "convincing evidence to the degree required by law to support" their claim that "SinSin acted in bad faith either at negotiation stage [sic], execution stage or contract implementation stage. . ." Ex. A at 43:164.

29.     Accordingly, the tribunal dismissed the relief and remedies sought in Respondent's Statement of Claim "in their entirety" and ordered in the First Award SPI to pay: (i) €240,000 in arbitrators' fees; (ii) the fees and expenses payable to the Malta Arbitration Centre; (iii) up to

€511,600 of Petitioners' legal fees and costs; (iv) the travel and expenses of all witnesses; (v) the professional fees of Petitioners' witness Accuracy up to €100,000; and (vi) 50% of the fees and expenses for logistical and translation services. *Id.* at 43–44.

30.     In the Second Arbitration, the tribunal found that SPI had breached the SPA and ordered them in the Second Award, jointly and severally, to pay Petitioners the outstanding balance owed under the SPA, which amounts to €38,054,000. The tribunal further ordered SPI to pay Petitioners interest at the rate of six percent on that outstanding balance, accruing from November 30, 2015 on half of the outstanding amount, and accruing from June 20, 2016 on the remaining half of the outstanding amount. Ex. B at 19:81. The tribunal dismissed Petitioners' claims for consequential damages. *Id.* The tribunal ordered that SPI bear 4/5ths of: (i) €180,000 in arbitrators' fees; (ii) the fees and expenses payable to the Malta Arbitration Centre; and (iii) up to €381,100 of Petitioners' legal fees and costs. SPI were further ordered to pay (i) the travel and expenses of all witnesses; and (ii) 50% of the fees and expenses for logistical and translation services. *Id.* at 20:82.

31.     The totals from the Awards are illustrated below:

| Award Items[3] | Amounts | Calculations |
|---|---|---|
| Arbitrators' fees (Both Award) | €174,000 | €210,000 – €36,000<br>The above calculation is used as Petitioners paid €210,000 in arbitrators' fees while they were only ordered to pay €36,000 (.2 x €180,000). |
| Fees & expenses payable to the Malta Arbitration Centre for the second proceeding | €36,800 | €46,000 x .8 |
| Petitioners' legal fees and costs | €816,480 | €511,600 + (€381,100 x .8) |

---

[3] Petitioners' schedule of costs up until September 9, 2020, was submitted to the arbitral tribunal as a collective document. *See* Li Decl. at ¶ 13. Petitioners' filing costs incurred in relation to the institution of the second proceeding, which was solely fees paid to the Malta Arbitration Centre, totaled €46,000. *See id.* at ¶ 13(a). Petitioners' arbitrators' fees totaled €210,000 for the two Awards. *See id.* at ¶ 13(b). Petitioners' logistical costs for both proceedings totaled €39,074.71, including €4,634.69 for translation services. *See id.* at ¶ 13(c). Petitioners' travel and other expenses incurred for Petitioners' representatives and witnesses totaled €35,271.26. *See id.* at ¶ 13(d). Petitioners' legal fees for the arbitrations totaled €1,345,067.77, including €208,102.99 in professional fees for Petitioners' expert witness Accuracy. *Id.* at ¶ 13(e).

| Professional fees of expert witness Accuracy (First Award) | €100,000 | |
|---|---|---|
| Travel and expenses of all witnesses | €35,271.26 | |
| Translation Services | €2,317.35 | €4,634.69 x .5 |
| Outstanding balance owed under the SPA | €54,171,172.22 | €38,054,000 + interest at the rate of six percent accruing from November 30, 2015, on half of the outstanding amount, and accruing from June 20, 2016, on the remaining half of the outstanding amount. Using a simple interest calculation, the proper calculation is: €27,403,050.30 + €26,768,121.92 The above amount is calculated as of March 31, 2023. Interest "at a rate of six per cent (6%) on the outstanding balance of the Sale Amount of EUR 38,054,000" accrues "up to the date of eventual payment." *See* Ex. B at 19:81. |

32.     The above amounts for the Awards equate to €55,336,040.83 as of March 31, 2023.

33.     Following their issuance, SPI sought to appeal the Awards in the Malta Court. The Malta Court in the Malta Lower Court Judgments declared both of SPI's appeals null and void and ordered them to pay costs. *See* Ex D at 11; Ex. E at 28.

34.     SPI then applied for new trials in each case, but the Chief Justice of the Malta Court rejected SPI's requests to revoke the Malta Court's earlier judgments and ordered SPI to pay expenses. *See* Ex. F at 6; Ex. G at 6.

35.     As of March 31, 2023, when converted to US dollars the total amounts for the Awards equate to $60,349,486.13.[4]

II.     **Respondent's Financial Status After the Awards**

36.     On October 29, 2020, the date of the First and Second Awards (*see* Exs. A-B),

---

[4] *See* Yahoo! Finance, https://finance.yahoo.com/currency-converter/ (last accessed on March 31, 2023).

Respondent's stock was trading at roughly $7.85. As of the date of the filing of the Petition (November 3, 2022), Respondent's stock was trading at roughly $1.41. Respondent's stock is trading at $1.15 as of March 21, 2023. *See* SPI ENERGY CO LTD, https://www.google.com/finance/quote/SPI:NASDAQ?sa=X&ved=2ahUKEwjXr-ub8e39AhUfFlkFHU44B60Q3ecFegQIGBAY&window=5Y (last visited on Mar 21, 2023).

37.     On June 9, September 30, and November 12, 2021, Respondent entered into three separate convertible promissory notes with a lender totaling $4,210,000 each. *See* FORM 8-K, dated          Oct.          28,          2022,          at          2, https://www.sec.gov/ix?doc=/Archives/edgar/data/0001210618/000168316822007209/spi_8k.htm.  On October 28, 2022, Respondent entered into separate amendments for all three convertible promissory notes. *Id*. Pursuant to the amendments, Respondent agreed to pay the lender an extension fee equal to two percent of the outstanding balance of the notes. *Id*. Respondent further must pay the lender according to a schedule in the amounts of $350,000 to $500,000, monthly, beginning in November 2022. *Id*. If Respondent does not pay the required monthly amount for four separate months, then the lender may call an event of default. *Id*.

38.     On April 8, 2022, Respondent raised an additional $2,000,000 from a lender by issuing an unsecured convertible promissory note at a 10% interest rate. *See* Form 8-K, dated April 8,               2022,               at               2, https://www.sec.gov/ix?doc=/Archives/edgar/data/0001210618/000168316822002498/spi_8k.htm. The note has a one-year maturity term. *Id*. The lender may redeem all or any part of the outstanding balance of the note, subject to a $350,000 monthly redemption amount, at any time after six months from the date of issuance. *Id*.

39.     On December 8, 2022, Respondent raised an additional $1.16 million from the sale of an aggregate of 1,150,000 ordinary shares pursuant to a securities purchase agreement Respondent entered into with its Chief Operating Officer and a BVI company affiliated with its CEO, Mr. Peng. *See* Form 8-K, dated December 22, 2022, at 2, https://www.sec.gov/ix?doc=/Archives/edgar/data/0001210618/000168316822008627/spi_8k.htm.

40.    As of June 30, 2022, Respondent had "$21.3 million in cash and cash equivalents, and restricted cash." *See* SPI ENERGY CO., LTD. Form 10-Q period ending June 30, 2022, at 23, https://www.sec.gov/ix?doc=/Archives/edgar/data/0001210618/000168316822005735/spi_i10q-063022.htm#q5.  Respondent's capital deficit was $82.6 million, and its accumulated deficit was $646.5 million. *Id*.

41.    As of September 30, 2022, Respondent had "$12.8 million in cash and cash equivalents, and restricted cash." *See* SPI ENERGY CO., LTD. Form 10-Q period ending Sep. 30, 2022,                                         at                                         26, https://www.sec.gov/ix?doc=/Archives/edgar/data/0001210618/000168316822007585/spi_i10q-093022.htm#q12.  Respondent's net working capital deficit was $96.9 million, and its accumulated deficit was $660.0 million. *Id*. During the nine months prior to September 30, 2022, Respondent suffered a net loss of $22.5 million. *Id*. at 19.

42.    Since the Awards were issued, Petitioners have requested payment from Respondent. Respondent has refused to pay and has now instead challenged the Awards in this proceeding. *See* Li Decl. at ¶ 14.

43.    Petitioners filed their first Petition to Confirm Arbitral Awards (ECF 1) on November 3, 2022.  Petitioners were not aware of the severity of Respondent's impecuniousness until recently. Despite continuing efforts to obtain payment, Respondent still has not paid Petitioners any amounts due under the Awards.

## ARGUMENT

**I.    The Awards Should be Confirmed Pursuant to the New York Convention**

44.    Malta acceded to the New York Convention on June 22, 2000.[5]

45.    The parties entered into the SPA in September 2014, well after Malta acceded to the New York Convention. Thus, the New York Convention governs the recognition and enforcement of the arbitration agreement contained in the SPA and any awards arising therefrom.

46.    The FAA provides that, within three years of the issuance of an arbitral award

---

[5] *See* United Nations Treaty Collection, Status of Treaties, Chapter XXII (Commercial Arbitration and Mediation), *available at* https://treaties.un.org/pages/ViewDetails.aspx?src=TREATY&mtdsg_no=XXII-1&chapter=22&clang=_en.

AMENDED PETITION AND MOTION TO CONFIRM ARBITRAL AWARDS          Case No. 2:22-CV-01991-MCE-JDP

falling under the New York Convention, "any party to the arbitration may apply … for an order confirming the award as against any other party to the arbitration." 9 U.S.C. § 207. Pursuant to Article IV of the New York Convention, which is incorporated into Chapter 2 of the FAA, the petitioning party must provide "[t]he duly authenticated original award or a duly certified copy thereof," and "[t]he original agreement" or "a duly certified copy thereof." *See* Exs. A-C.

47.    A petition to confirm a foreign arbitral award is an expedited proceeding that is treated as a motion under the Federal Rules of Civil Procedure. *See* 9 U.S.C. § 6 (under Chapter 1 of the FAA, a petition to enforce a domestic arbitral award is treated as a motion); 9 U.S.C. § 208 (providing that Chapter 1 of the FAA applies to proceedings for recognition and enforcement of foreign arbitral awards unless inconsistent with Chapter 2 of the FAA or the New York Convention); *see also Cypress Equip. Fund, Ltd. v. Royal Equip., Inc.*, No. C-96-3783 MMC, 1997 WL 106137, at *7 (N.D. Cal. Jan. 13, 1997) ("Both parties agree that arbitration confirmation proceedings are intended to be expedited proceedings.").

48.    A district court's "review of a foreign arbitration award is quite circumscribed." *Ministry of Def. of the Islamic Republic of Iran v. Gould, Inc.*, 969 F.2d 764, 770 (9th Cir. 1992). There is a general pro-enforcement bias under the New York Convention. *See id.*; *see also Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519–20, 520 n.15 (1974). The "district court has little discretion: '[t]he court *shall* confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the [New York] Convention.'" *Ministry of Def.*, 969 F.2d at 770 (citing 9 U.S.C. § 207); *see also Polimaster Ltd. v. RAE Sys., Inc.*, 623 F.3d 832, 835–36 (9th Cir. 2010).

49.    The New York Convention enumerates seven defenses to the recognition or enforcement of an arbitral award: (1) lack of capacity of a party or invalidity of the arbitration agreement; (2) lack of proper notice or inability to present a case; (3) the award goes beyond the scope of the submission to arbitration; (4) the composition of the arbitral tribunal or the arbitral procedures were not in accordance with the parties' agreement or the applicable law; (5) the award has not yet become binding or has been set aside by a competent authority; (6) the subject matter of the dispute is not capable of being arbitrated; and (7) recognition of the award would be contrary

to public policy of the enforcing country. New York Convention, Art. V.

50.     The burden of showing the existence of a New York Convention defense is on the party seeking to avoid enforcement of the award. *Polimaster*, 623 F.3d at 836. In light of the pro-enforcement bias for foreign arbitral awards, these grounds "should be construed narrowly." *See Ministry of Def.*, 969 F.2d at 770 (citing *Parsons & Whittemore Overseas Co. v. Societe Generale de L'Industrie du Papier*, 508 F.2d 969, 974, 976 (2nd Cir. 1974)).

51.     The Awards are not subject to challenge under any of the seven grounds enumerated in the New York Convention. Each Award was made in accordance with the terms of the SPA and Maltese law. SPI actively participated in the arbitrations without objection. The parties prepared and presented their cases to the tribunal over the course of more than two years. The Awards total 64 pages, are thoroughly reasoned, and carefully apply Maltese contract law to each side's arguments and the plain language of the SPA. *See* Exs. A-B.

52.     The Awards have not been set aside by a competent authority. On the contrary, the Malta Court twice dismissed SPI's attempts to challenge the Awards. *See* Exs. D-G. Indeed, even if the Awards were still being litigated by the Malta Courts (which they are not), "'American judges hold -- virtually unanimously -- that under the New York Convention an arbitration award becomes binding when no further recourse may be had to another arbitral tribunal (that is, an appeals tribunal)' and that 'a court maintains the discretion to enforce an arbitral award even when nullification proceedings are occurring in the country where the award was rendered.'" *Iraq Telecom Ltd. v. IBL Bank S.A.L.*, 597 F. Supp. 3d 657, 665 (S.D.N.Y. 2022) (citing cases).

53.     Finally, confirming the Awards and holding SPI to the bargain they made in the SPA would not be contrary to public policy in the United States.

54.     The SPA itself reinforces the narrow scope of judicial review by providing that any arbitral awards shall be "final and binding upon the Parties." Ex. C at 16:16.2.

55.     Accordingly, the Awards should be confirmed.

**II.     Judgment Should be Entered Concurrently with Confirmation of the Awards**

56.     Petitioners respectfully request that judgment be entered at the same time as the confirmation of the Awards. In this summary proceeding, there is no need for the entry of judgment

to be delayed pending approval of form – Respondent has already delayed the payment of its obligations for far too long. Rather, because Petitioners seek only an order mandating the payment of "a sum certain," it would be appropriate for the clerk of this Court, "without awaiting the court's direction, [to] promptly prepare, sign, and enter the judgment." *See* Fed. R. Civ. P. 58(b)(1)(B); *see also Ministry of Defense and Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Defense Systems, Inc.*, 665 F.3d 1091, 1094 n.1 (9th Cir. 2011) ("Confirmation is a summary proceeding that converts a final arbitration award into a judgment of the court …. Once the award is confirmed, the judgment has the same force and effect of a judgment in a civil action and may be enforced by the means available to enforce any other judgment.") (citations omitted); *see also Pharmaniaga Berhad v. E*HealthLine.com, Inc.*, 344 F. Supp. 3d 1136, 1145-46 (MCE) (E.D. Cal. 2018) (simultaneously entering judgment with confirmation of an arbitral award).

**III.    Injunctive Relief Should Be Entered to Stop Respondent from Dissipating Assets**

57.    "[T]his Court's injunctive authority may reach worldwide. 'Once personal jurisdiction of a party is obtained, the District Court has authority to order it to 'freeze' property under its control, whether the property be within or without the United States.'" *Smagin v. Yegiazaryan*, No. 2:14-CV-09764-R, 2016 WL 11676607, at *2 (C.D. Cal. Nov. 14, 2016), *aff'd*, 733 F. App'x 393 (9th Cir. 2018) (citing *Hilao v. Marcos (In re Estate of Marcos)*, 25 F.3d 1467, 1478 (9th Cir. 1994)).

58.    This Court should exercise that authority here and grant injunctive relief in the form of a worldwide asset freeze effective immediately until Respondent has paid Petitioners the amount due under the Awards. *Id.* at *1 ("the Court concludes that it has authority to issue preliminary injunctive relief in a post judgment setting. . .  courts in the Third, Fifth, Sixth, and Eleventh Circuits have issued or affirmed similar asset freezes 'where waste, dissipation, or transfer of assets by [judgment debtor] has a direct impact on appellee's potential ultimate recovery.'") (citations omitted).

59.    In order to grant injunctive relief, Petitioners must establish that (1) they have succeeded on the merits of the confirmation claim (or that they have a likelihood of success on the merits), (2) they are likely to suffer irreparable harm absent an injunction, (3) the balance of the

1    equities tips in favor of an injunction, and (4) an injunction is in the public interest. *Id*.

2        60.    It is clear that Petitioners have a likelihood of success on the merits as "[n]ormally,

3    confirmation of an arbitration award is 'a summary proceeding that merely makes what is already

4    a final arbitration award a judgment of the court . . .and the court 'must grant' the award 'unless

5    the award is vacated, modified, or corrected.'" *Vivi Robyn Stafford v. Baart Behav. Health Servs.,*

6    *Inc.*, No. CV 15-252-GW (MRWX), 2020 WL 9172809, at *3 (C.D. Cal. Mar. 11, 2020), *aff'd sub*

7    *nom. Stafford v. BAART Behav. Health Servs., Inc.*, 855 F. App'x 426 (9th Cir. 2021) (citations

8    omitted); *see also supra* at ¶¶ 44-56.

9        61.    Petitioners are further likely to suffer irreparable harm absent an injunction.

10       62.    As discussed above, Respondent has entered into four convertible promissory notes

11   for roughly $14 million (and has subsequently extended three of the notes) over the past two years.

12   These convertible promissory notes are required to be paid monthly, have high interest rates, the

13   lender may redeem all or any part of the outstanding balance of one of the notes at any time, and

14   Respondent may face an event of default if it misses payments on the other three notes. Further,

15   Respondent has raised an additional $1.16 million from the sale of an aggregate of 1,150,000

16   ordinary shares in the company pursuant to an agreement entered with its COO and a BVI company

17   affiliated with its CEO. *See supra* at ¶¶ 37-39.

18       63.    Moreover, Respondent's share price has decreased from nearly $8 a share as of the

19   date of the Awards to now just above $1. *See supra* at ¶ 36. This is alarming when coupled with a

20   comparison of Respondent's June 30 and September 30, 2022 10-Q's, which state that

21   Respondents cash, cash equivalents, and cash reserves have decreased from $21.3 million to $12.8

22   million. *See supra* at ¶¶ 40-41. Respondent's working capital deficit has increased from $82.6

23   million to $96.9 million, and its accumulated deficit increased from $646.5 million to $660 million.

24   Respondent has also suffered a net loss of $22.5 million in the nine months preceding September

25   30, 2022. *See id.*

26       64.    The above facts combined with Respondent's history of transferring its assets to a

27   company affiliated with its CEO's wife for $1 (*supra* at ¶ 23) causes great concern that Respondent

28   will seek to hide its assets and make itself virtually judgment proof. Doing so would cause

irreparable harm to Petitioners. *Smagin*, 2016 WL 11676607, at *3 ("In terms of irreparable injury, [Respondent] has fought long and hard to prevent enforcement of [the] award and judgment.").

65.     Likewise, the balance of "equities and public interest weigh in favor of an injunction because the injunction operates only to ensure that [Respondent] lives up to [its] obligations under the arbitration award." *Id.* at *4.

66.     Accordingly, this Court should grant worldwide injunctive relief to preserve Petitioner's ability to recover on the Awards. *Id.* (granting a worldwide injunction to preserve petitioner's ability to recover on its judgment); *see also Shanghai Lan Cai Asset Mgmt. Co, Ltd. v. Jia Yueting*, No. 218CV10255SJOMRWX, 2018 WL 10151034, at *4 (C.D. Cal. Dec. 13, 2018) (issuing a TRO "enjoining Respondent from transferring, concealing, reducing, encumbering, or otherwise making unavailable" specific property to "preserv[e] the status quo" until petitioner's motion to confirm its arbitral award could be adjudicated and a final judgment reached); *see also Shanghai Lan Cai Asset Mgmt. Co. v. Jia Yueting*, No. 218CV10255SJOMRWX, 2019 WL 11273229, at *3 (C.D. Cal. Sept. 3, 2019) (granting a preliminary injunction post confirmation of arbitral awards to enjoin "Respondent from taking any step to transfer, conceal, reduce, encumber, or otherwise make unavailable—either personally or through instructions to another—any non-exempt assets up to the value of this Court's judgment against Respondent.").

## IV.     Petitioners Should Be Awarded Their Fees Incurred in Confirming the Awards

67.     As the Ninth Circuit has made clear, "federal law permits an award of attorney's fees in an action under the [New York] Convention," because an "'unjustified refusal to abide by an arbitrator's award may equate [to] an act taken in bad faith, vexatiously or for oppressive reasons.'" *Cubic Defense*, 665 F.3d at 1104 (citation omitted). The authority to order fee-shifting in a New York Convention proceeding does not derive from any independent statute or rule, but from the courts' inherent authority to deter bad faith litigation tactics. *Id.*

68.     The Court should exercise that authority here—Respondent's bad faith actions during the arbitrations and multiple appeals in the Malta courts, as well as its refusal to abide by the self-executing arbitral awards are textbook cases of bad faith conduct. *Sheet Metal Workers' Int'l Ass'n Loc. Union No. 359 v. Madison Indus., Inc. of Arizona*, 84 F.3d 1186, 1192 (9th Cir.

1996) (affirming award of attorney fees in confirmation proceeding where "[t]he court found it significant that [the respondent] simply refused to honor the award rather than filing a petition to vacate it, and requested a vacation of the award only in response to the [petitioner's] petition to confirm it.").

69. Since the Awards were issued, Petitioners have requested payment of the Awards. Respondent has repeatedly declined to make those payments. *See* Li Decl. at ¶ 14. This alone is reason enough to grant Petitioners' fees in confirming the Awards. *Gen. Marine II, LLC v. Kelly*, No. 3:21-CV-1425-W-DEB, 2022 WL 4488003, at *2 (S.D. Cal. Sept. 27, 2022) ("Generally, when a defendant simply refuses to pay an arbitration award and forces the plaintiff to file a petition to confirm the award, courts grant attorney's fees based on a finding of bad faith.") (citing cases).

70. Moreover, Respondent's frivolous arguments in the Response to Petition to Confirm Arbitral Award (ECF 13; "**Response**") show the extent of Respondent's bad faith attempts to not pay the Awards.

71. In the Responses' Prayer for Relief, Respondent requested that Petitioners submit "admissible evidence confirming their identity, citizenship, and link to the SPA Awards . . . with time for Respondent to review and respond" as well as "further briefing to allow both sides to obtain and present admissible evidence *on the law of Malta*. . . with respect to (1) SPI's contentions with respect to the *provisions of the SPA and Maltese law on whether SPI maintained a right of appeal* under the SPA as alleged herein, and (2) if so, *whether the appeal as advanced by SPI in Malta would have been successful in overturning the award*[.]" *See* Response at Prayer for Relief (emphasis added).

72. First, Respondent knows of Petitioners' identity, citizenship, and link to the Awards. Respondent entered into the SPA with Petitioners in 2014 and has participated in numerous arbitrations and litigations with Petitioners over the past few years. *See* Exs. A-G. Any arguments otherwise are frivolous and made in bad faith.

73. Second, Respondent's request for further briefing on the law of Malta is not only inappropriate to request from a court of secondary jurisdiction, but an egregiously improper

attempt to greatly expand the scope of this action and get a *fourth bite* at the apple after the arbitral tribunal and court of primary jurisdiction ruled on these very issues. *See Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*, 40 F.4th 56, 62 (2d Cir. 2022) ("The state with primary jurisdiction is 'free to set aside or modify an award in accordance with its domestic arbitral law and its full panoply of express and implied grounds for relief . . . All other signatory states are 'secondary jurisdictions,' and these states may decide only whether to enforce the arbitral award.") (citations omitted).

74.     Indeed, Respondent recognizes the futility of this argument when it concedes in the Response that "the Courts of Malta have found [that Respondent's interpretation of the arbitral procedure is wrong] and that this Court may elect not to revisit those decisions[.]" Response at ¶ 55.

75.     Respondent's "unjustified refusal to abide by an arbitrator's award" and "frivolous dilatory tactics" are nothing more than an attempt to stall confirmation of the Awards. *See Ministry of Def. & Support for Armed Forces of Islamic Republic of Iran v. Cubic Def. Sys., Inc.*, No. 98-CV-1165-B DHB, 2013 WL 55828, at *6-7 (S.D. Cal. Jan. 3, 2013) (granting attorneys' fees in confirmation proceeding) (citations omitted).

76.     Pursuant to Local Rule 293 and Federal Rule of Civil Procedure 54(d)(2)(B), Petitioners reserve their right to bring a timely motion for fees following the entry of judgment. However, this Court "may decide issues of liability for fees before receiving submissions on the value of services." Fed. R. Civ. P. 54(d)(2)(C). Petitioners respectfully submit that it is in the interest of the parties – and in the interest of the swift enforcement of arbitral awards that the New York Convention envisions – for the Court first to confirm the Awards. *See Pharmaniaga Berhad*, 344 F. Supp. 3d at 1146 (MCE) (granting attorneys' fees in a confirmation proceeding and ordering petitioner to "file a motion pursuant to Rule 54(d) of the Federal Rules of Civil Procedure to address the amount of the attorney's fees and other costs it seeks. That motion need not address [the party's] entitlement to attorney's fees, which is established by this Order").

1

**PRAYER FOR RELIEF**

2   WHEREFORE, Petitioners pray for an order and for entry of judgment on the following

3 terms:

4  (1) Confirming and enforcing the Awards against Respondent;

5  (2) Compelling Respondent to pay Petitioners the amounts payable to Petitioners under the

6    Awards, which is no less than $60,349,486.13; subject to a continuing interest rate of six

7    percent accruing from November 30, 2015 on half of the outstanding balance owed under

8    the SPA (€19,027,000), and accruing from June 20, 2016 on the remaining half of the

9    outstanding amount owed under the SPA (€19,027,000);

10  (3) Granting Petitioners injunctive relief in the form of a worldwide asset freeze of

11    Respondent's assets until Respondent pays the Awards in full;

12  (4) Compelling Respondent to pay Petitioners' costs incurred in this action pursuant to

13    Federal Rule of Civil Procedure 54(d)(1);

14  (5) Any and all other relief that the Court deems just and proper.

15 Dated:         Respectfully submitted,

16            KING & WOOD MALLESONS LLP

17

18            By: */s/  Yan Ge*
               Yan Ge
19              M.M. Utterback

20            *Attorneys for Petitioners SinSin Europe*
            *Solar Asset Limited Partnership and*
21            *SinSin Solar Capital Limited Partnership*

22

23

24

25

26

27

28